## BILL MAYHEW v. STATE.

### No. 2142. Decided January 22, 1913.

#### 1.—Murder—Regular Term—Special Term.

Where the various orders entered by the judge designated a special session or special term of the District Court as a part of the regular term of the court, such recitation in the orders could not, and did not, change the legal effect and the effect in fact that the term called was a special term, and that the orders made therein were made at a special term or session of the court.

#### 2.—Same—Case Stated—Special Term of District Court.

Where the order of the judge was that the District Court convene in special session at a certain place and time, it showed without question that the judge convened the said District Court in special session, and the fact that said time at which he convened said special session embraced part of the time fixed by law at which the regular term of said court could have been continued and held, cannot and did not make any difference so far as effecting the validity of said special term of the court and the orders made therein.

#### 3.—Same—Regular and Special Term—Order Concerning Term.

Even if it be conceded, and the orders of the district judge could be construed to mean, that said special term of the District Court so called and convened was intended to be a part of the regular term of said court, it could have no such effect as to render the term of the court illegal and would not be a regular term of the court, but a special term. Davidson, Presiding Judge, dissenting.

#### 4.—Same—Special Term—Change of Venue—Notice.

Under the law as it now stands, a special term of the District Court can be convened for the purpose of entering any order that could be entered at a regular term thereof, and no notice or publication thereof is now required by law. See opinion for discussion of the history of the legislation on this subject.

#### 5.—Same—Special Term of District Court—Notice—Repeal.

By the Revised Statutes of 1911, Section 4, repealing clause of the final title of said Revised Statutes, under the general provisions, all civil statutes of a general nature in force when said Revised Statutes took effect and which are not included therein and which are not thereby expressly continued in force, are thereby repealed, and this repealed all those articles of the Revised Statutes of 1895, which required previous notice of the time and publication, convening the District Court in special session; and no notice is now required.

#### 6.—Same—District Court—District Judge—Special Term—Change of Venue.

The law now is that no notice whatever of thirty days or any other time is required to be given and published of the convening of any special term of the District Court, and the district judge at such special term can make any order that he could make at any regular term of the court, including that of changing the venue in a case, whether he transact any other business or not. Following Ex Parte Martinez, 66 Texas Crim. Rep., 1, and other cases.

#### 7.—Same—Court of Civil Appeals—Statute Construed.

The case of Jowell v. Coffee, 132 S. W. Rep., 886, Court of Civ. App., with reference to requiring thirty days notice of special term of District Court, can have no application as the law now stands, and since the adoption of the Re-

vised Statutes of 1911, expressly repealing Articles 1114-1116, inclusive of the Revised Statutes of 1895, which required notice, etc.

### 8.—Same—Change of Venue—Appeal Pending—Mandate—Judicial Knowledge.

This court judicially knows that the former appeal in this case was decided and the cause reversed and no motion for rehearing made at the time the lower court called a special term of the District Court to change the venue of such case; that the mandate was issued and sent to the lower court and must have been filed prior to the convening of said special term, therefore, said trial court had power and jurisdiction to change the venue in such case in said special session; besides, no order with reference to said case was made at the time of calling and convening said special session. Davidson, Presiding Judge, dissenting.

### 9.—Same—District Judge—Change of Venue—Statutes Construed.

Under Article 626, Code Criminal Procedure, the district judge of his own motion has the right to change the venue of a criminal case, and unless' he abuses his discretion, the Appellate Court will not interfere. Following Bohannon v. State, 14 Texas Crim. App. 271, and other cases.

### 10.—Same—Case Stated—Change of Venue.

Where the record on appeal showed that the District Judge who changed the venue on his own motion was familiar with all the facts and conditions surrounding the case, and under the sanction of his official oath reached the conclusion that a trial alike fair and impartial to the State and to the defendant could not be had in the county of the prosecution, his action in changing the venue of the case was not arbitrary, although witnesses were introduced who testified that a fair trial could be had.

### 11.—Same—Evidence—Res Gestae—Acts of Third Parties.

Where the acts of a third party were clearly a part of the res gestae occurring within a few seconds after the defendant stabbed the deceased, and that the defendant, at the time, was standing within a few feet from said third party at the time, there was no reversible error; besides, the bill of exceptions was defective.

### 12.—Same—Evidence—Mental Condition of Defendant—Res Gestae.

Where rejected testimony as to the mental condition of defendant was clearly no part of the res gestae, there was no error.

### 13.—Same—Evidence—Motive—Third Parties.

Upon trial of murder, there was no error in permitting the State to cross-examine defendant's witness to show motive on the part of defendant, and also the acts of defendant and other parties immediately preceding the homicide.

### 14.—Same—Evidence—Contradicting Witness—General Reputation.

Where the State sought to contradict defendant's witness, but not to attack his general reputation for truth and veracity, there was no error in not permitting defendant to introduce testimony of the general reputation of said witness.

### 15.—Same—Remarks by Judge.

Where the remarks by the trial judge to the jury before they were discharged as to statements which they might make to defendant's counsel were harmless, and no injury was shown to defendant by reason thereof, there was no error.

### 16.—Same—Evidence—Threats.

Where defendant objected to certain testimony of threats by defendant against deceased, but the bill of exceptions itself showed that such threats were made, there was no error.

### 17.—Same—Charge of Court—Requested Charges.

Where no reason is assigned in the motion for new trial why the requested charges should have been given, there was no error. Following Ryan v. State, 64 Texas Crim. Rep., 628, and other cases.

Appeal from the District Court of Shackelford. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Scott & Brelesford* and *W. L. Grogan* and *J. J. Butts,* for appellant.—On the question of change of venue, jurisdiction and special term: Jowell v. Coffee, 132 S. W. Rep., 886; People v. Riley, 16 Cal., 186; Toler v. Com., 23 S. W. Rep., 347; Flannagan v. Borg, 64 Minn., 394; Reames v. Kearn (Tenn.), 5 Cold., 217, 11 Cyc., 1131.

On question of not permitting testimony of mental condition of defendant: McGee v. State, 19 S. W. Rep., 764; Bronson v. State, 59 Tex. Crim. Rep., 17, 127 S. W. Rep., 175.

On question of not permitting testimony of general reputation of witness: Graham v. State, 57 Tex. Crim. Rep., 104, 123 S. W. Rep., 691; Alberson v. State, 54 Tex. Crim. Rep., 8, 111 S. W. Rep., 738; Brown v. State, 52 Tex. Crim. Rep., 267, 106 S. W. Rep., 368.

On question of refusing special charges on threats: Lee v. State, 55 Tex. Crim. Rep., 379, 116 S. W. Rep., 1153; Evans v. State, 55 Tex. Crim. Rep., 450, 117 S. W. Rep., 167; Snell v. State, 56 Tex. Crim. Rep., 246, 119 S. W. Rep., 852.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was indicted for murder in Eastland County, Texas. In the first trial of the case in that county there was a hung jury. On the second trial appellant was convicted of murder in the second degree. He appealed from that trial, and this court, on February 7, 1912, reversed that judgment. The case is reported in 65 Tex. Crim. Rep., 290, 144 S. W. 229.

The regular term prescribed by law for holding the District Court in Eastland County fixed the time for the term to begin on the first Monday in January and that it could continue for eight weeks. The first day of January, 1912, was on Monday; so that the eight weeks which said court was authorized to be held could continue at least until midnight of February 24, 1912. On January 31, 1912, the business of the term apparently having been disposed of, the district judge had entered in the minutes of said court the following: "The above and foregoing minutes embraced on and between pages 430 to 458 hereof, being read in open court and found correct, are hereby approved as a part of the minutes for the January term, 1912, of this court. Witness my hand this, the 31st day of January, A. D. 1912.

"Thomas L. Blanton,

Judge 42nd Judicial District of Texas."

"Attest: Joe Burkett, Clerk."

And then it seems adjourned the January term of said court.

Presiding Judge Davidson has prepared an opinion herein by which he holds that this conviction must be set aside and the cause reversed and the venue ordered changed back from Shackelford County, where this trial occurred, to Eastland County, on two grounds:

First, that the special term of court of Eastland County called by Judge Blanton, the judge of the district embracing Eastland County, at which the venue of this case was changed from Eastland to Shackelford County, was not a special term of that court convened by the judge, but that it was an attempt to reopen the regular January term of said court, which he holds could not be done.

Second, that the order changing the venue from Eastland to Shackelford County is void, because the order convening the District Court of Eastland County in a special term, or the attempt to reconvene the regular January term, was made pending the appeal of this case in this court and before the mandate from this court reached the lower court.

As we could not agree with him on either of said propositions and as the writer had to prepare an opinion in the Will Drake case, a companion case to this, on the same questions, the duty of preparing the opinion in this case was, therefore, devolved upon the writer hereof.

On February 12, 1912, Julge Blanton, the judge of the 42nd Judicial District of Texas, which embraces Eastland County, made and had entered in the minutes of said court on February 14, 1912, the following order convening the said court in special session:

"IN THE DISTRICT COURT OF EASTLAND COUNTY, TEXAS.

"During Regular Time of January Term, 1912.

"It appearing to the court that the regular term of the January term, 1912, of the District Court of Eastland County, Texas, convened on the first day of January, A. D. 1912, and by law could continue for eight weeks, or until and including the 25th day of February, but that because all business then on the docket subject to trial had been disposed of on the 31st day of January, 1912, court then adjourned; and it further appearing to the court that since said adjournment, the cases of No. 2540, the State of Texas vs. Bill Mayhew and No. 2666, the State of Texas vs. Will Drake, have been reversed by the Court of Criminal Appeals, and that the mandates in same will have been duly returned to this court by the time hereinafter mentioned; and it further appearing to the court that the said Will Drake is now in jail without bond and that he is now entitled to bail; and it further appearing to the court that a necessity will exist for transferring said two cases on a change of venue to another county, and that unless such orders are made during the regular eight weeks

allowed by law for said January term, 1912, said two cases will have to lie over until the next regular term of court, six months hence, thus depriving both the defendants and the State of a speedy trial. It is therefore ordered that said District Court of Eastland County, Texas, convene in special session at the courthouse of Eastland, on the 24th day of February, A. D. 1912, at 8:30 o'clock a. m. to resume business under the regular January Term, 1912, of said court, and during such regular term time, and only for the purpose of disposing of said two cases above mentioned, at which time the said two defendants, Bill Mayhew and Will Drake, are hereby notified to be present before this court, and the clerk hereof is to spread this order upon the minutes of this court and issue and have precept and copy of this order served upon Messrs. H. P. Brelsford and J. J. Butts at once and copy published in the Eastland Chronicle, done this February 12th, 1912.                                    ''Thomas L. Blanton,

''Judge 42nd Judicial District of Texas.''

In accordance with said order Judge Blanton appeared at the time and place fixed therein, had the court duly opened and the minutes show as follows:

''Be it remembered that on this the 24th day of February, A. D. 1912, of the District Court of Eastland County, Texas, by order of this court, made on February 12th, 1912, the Hon. District Court of Eastland County, Texas, was again convened, there being present and presiding, Thomas L. Blanton, judge of the 42nd Judicial District of Texas and the following officers, viz.: Hon. W. L. Morris, district attorney; E. P. Kilborn, sheriff; Joe Burkett, clerk, when the following proceedings were had and entered of record, to-wit:

''The State of Texas  ⎫
          vs.        ⎬ No. 2540.  January term, 1912, of the District
Bill Mayhew          ⎭ Court of Eastland County, Texas.

''February 24th, 1912.

''On this day this cause coming on to be heard on the question of the change of venue of said cause to some other county; and thereupon came on to be heard the defendant's plea to the jurisdiction of this court, to at this time, make and enter an order or judgment changing the venue of said cause and transferring same to some other county for trial and the court having heard and considered said plea and being fully advised in the premises is of the opinion that said plea is not well taken and that this court has jurisdiction to make and enter said order so changing the venue of said cause, it is therefore considered, ordered and adjudged by the court that said plea be and the same is hereby overruled, to which said order and judgment the defendant in open court then and there duly excepted.''

The said plea to the jurisdiction of the court in the order just above

referred to is quite lengthy. It is unnecessary to copy it in full. In it appellant sets up and contends: "This court has not jurisdiction, power or authority to make and enter a valid order or judgment changing the venue of this cause from the District Court of Eastland County, to the District Court of any other county in the State of Texas, for this:

"1. It appears from the order of the judge convening of the *special term* of the District Court in and for Eastland County, Texas, a certified copy of which is hereto attached and made a part hereof and reference thereunto made:

"(a) That this is a *special term* of said District Court in and for said district.   *   *   *

"(d) That said order on its face shows that said *special term* was (not) convened for the purpose of trying any cases on the docket of said court; nor for the purpose of inquiring into any violation of any criminal law of the State of Texas, occurring subsequently to the adjournment of the regular term of the District Court in and for said Eastland County, nor for the purpose of transacting any business or engaging in any proceedings or doing aught else contemplated by, or provided in, the statute law of the State of Texas authorizing the convening of the *special term* of the District Court;   *   *   *

"(g) Said order, when considered in connection with the laws of the State of Texas providing for the holding of courts in the 42nd Judicial District in said State of Texas, shows that this cause should not be tried and disposed of at this *special term* of this court, because the empaneling of no petit jury is provided for   *   *   *   nor in the order of the judge convening this court in *special term* and because this is a *special term* of a district court in and for the said County of Eastland, could not remain in session longer than 12 o'clock a. m. on this date, because, etc.   *   *   *

"2. That no notice of the time and place of the convening of said *special term* of this court have been issued by the clerk of the District Court in and for Eastland County, Texas, nor published by the sheriff of Eastland County as required by law.

"3. Because the law authorizing and providing for the convening and holding oi *special terms* of the District Court does not authorize the convening of said court in *special term*, nor the holding of *special terms* thereof, merely and solely for the purpose of changing the venue of cases of the docket thereof, or that may be pending therein." (Italics ours.)

It is useless to copy any more of appellant's said plea. What we have copied above was done for the purpose of showing that the appellant and his attorneys contended only and solely that said term of court at which the venue in this case was changed was a *special term* and not the regular term of said court provided by law and no part thereof. The whole motion throughout, in every particular, so states it to be a *special term*, so claims it to be a *special term*, and

all of the objections made thereto are because it is a *special term* and not the regular term and no part of the regular term.

Then, in addition to this, the appellant took a bill of exceptions to the action, ruling and judgment of the court overruling his said plea to the jurisdiction on the grounds stated therein, restating as his objections thereto substantially the same grounds on which he had made it, contending, throughout in his objections, that the said term of court was a *special term* thereof and only a *special term* and not the regular term and no part of the regular term. It is unnecessary to repeat by quotation his exceptions in his bill of exceptions, for they are merely a repetition of his contentions in the said motion or plea itself. It might be added that the order of the court convening the court, also states it is a special term.

When the said term of court was thus convened in special session in strict conformity to and in obedience to said order, above copied, convening it, the appellant appeared therein, in open court in person and all of his attorneys so appeared therein in open court.

It seems that the district judge, after making his order convening the said District Court in *special session*, because of the fact that the time at which he convened it was within the period of time through which the regular term could have been held, undertook to treat it and designated it in his orders made on February 24, 1912, as a part of the said regular term of the court.

The recitations in these various orders wherein the judge may have designated the convening of said court in *special term* or session as a part of the *regular January term* of the court can not change and does not change the legal effect and the effect in fact of the orders that were made, and that the same was a *special term* or session of the court. In the very order convening the court, after the recitations, and the only order that is made therein is in this language: "It is, therefore, ordered that the said District Court of Eastland County, Texas, convene in special session at the courthouse in Eastland on the 24th day of February, A. D. 1912, at 8:30 o'clock a. m." This shows, without question and without doubt that he was convening and did convene the said District Court in special session; that said time at which he convened said special session embraced part of the time fixed by law at which the regular term of said court could have been continued and held, can not and does not make any difference so far as affecting the validity of said special term of the court and the orders made at that time are concerned. Even if it be conceded, and said orders could be construed to mean, that said special term of the court so called and convened was intended to be a part of the regular January term of said court, it could have no such effect as to render the term of the court illegal. And as we see it, by no show of reason can it be claimed that if it was so attempted to be, or actually, so designated, it would be a regular term of the court or any part thereof.

Vol. LXIX Crim.—13.

As to appellant's various grounds of objection to the convening of said court in special session and that it could not be held and convened in special session, solely for the purpose of entering an order changing the venue and that a special term could not be convened for any purpose, without giving the thirty days notice and publication thereof as formerly required by the law, we think they can in no event be maintained.

We think the history of the legislation of this State on this subject clearly demonstrates that no notice, or publication thereof, is now required by the laws of this State, and that a special term of the District Court can be convened for the purpose of entering any order that could be entered at a regular term thereof. It is unnecessary to here detail the history of this legislation, other than to state, that prior to our Constitution of 1876, no special term of the District Court could be held or called for any purpose, under previous constitutions. In order that there should be no question that a special term would be entirely legal it was expressly provided for in our Constitution of 1876, Section 7, Article 5. The Legislature, soon after our present Constitution was adopted, provided for special terms of the District Court, but it required the order therefor to be made during the regular term while in session and the thirty days' notice and publication thereof before a special term could be held. Then afterwards it passed an Act in 1905, providing for the convening of the court in special term without fixing any time for notice and publication thereof, and without the court then being in session at a regular term; but by the terms of section 5 of that Act certain provisions of the Revised Statutes of 1895 were not repealed, and there was some doubt entertained, whether or not a special term could be called under that Act of the Legislature without giving the thirty days notice. This court has held, in construing that Act in connection with the Revised Statutes of 1895, that no notice and no publication thereof was necessary; but whatever doubt there may have been before the Revised Statutes of 1911 were adopted, there can be none since.

The thirty-second Legislature, at its regular session of 1911, passed an act adopting the Revised Civil Statutes of the State of Texas, which was approved by the Governor on April 1, 1911, by the terms of which the said Revised Statutes became effective September 1, 1911. By the Revised Statutes of 1911 the Legislature re-enacted substantially Articles 1111 and 1112 of the R. S. of 1895, which are now Articles 1718 and 1719, respectively, in precisely the same language as in the Revised Statutes of 1895. These two articles provide for holding the regular terms of court. But instead of re-enacting any of the other articles in Chapter 4, Title 28 of the Revised Statutes of 1895, which required in certain contingencies thirty days notice and the publication thereof in convening special terms of the District Court, enacted, or re-enacted the following articles in said chapter:

"Art. 1720. Whenever it may become advisable, in the opinion of a district judge, to hold a special or terms of the District Court in any county in his district, such special term or terms may be held; and such district judge may convene such special term at any time which may be fixed by him. Such district judge may appoint jury commissioners, who may select and draw grand and petit jurors in accordance with the law. Such jurors may be summoned to appear before such district court at such time as may be designated by the judge thereof; provided, that in the discretion of the district judge, a grand jury need not be drawn or impaneled.

"Art. 1721. The grand jury selected, as provided for in the last preceding article, shall be duly impaneled, and shall proceed to the discharge of its duties at a regular term of the district court.

"Art. 1722. Any person indicted by the grand jury impaneled at a special term of the district court may be placed upon trial at such special term.

"Art. 1723. No new civil cases can be brought to a special term of the district court.

"Art. 1724. The juries for any special term shall be summoned in accordance with the law regulating juries at regular terms of court; and at any special term all proceedings may be had in any case which could be had at any regular term of such court; and all process issued to a previous regular term or to such special term, and all orders, judgments and decrees, and all proceedings had in any case, criminal or civil, which would be lawful if had at a regular term, shall have the same force and effect; and any proceeding had may be appealed from under the same rules, regulations and limitations as provided for in appeals from regular terms of court.

"Art. 1725. Should the judge of any District Court not appear at the time appointed for holding the same, and should no election of a special judge be had, the sheriff of the county, or in his default any constable of the county, shall adjourn the court from day to day for three days; and if the judge should not appear on the morning of the fourth day, and should no special judge have been elected, the sheriff or constable, as the case may be, shall adjourn the court until the next regular term thereof.

"Art. 1726. Whenever any District Court shall be in the midst of the trial of any cause when the time for the expiration of the term of said court, as fixed by law, shall arrive, the judge presiding shall have the power and may, if he deems it expedient, extend the term of said court until the conclusion of such pending trial. In such case, the extension of such term shall be shown in the minutes of the court before they are signed. In case of the extension of the term of court, as herein provided, no term of court shall fail because thereof in any other county, but the term of court therein may be opened and held as now provided by law, when the district judge fails to appear

at the opening of a term of court.'' (These articles with 1718 (1111) and 1719 (1112) are all of our statutory provision on both regular and special terms of the District Courts.)

Then in section 4, repealing clause of the Final Title of said Revised statutes of 1911, under the general provisions enacted as follows: ''Sec. 4. That all civil statutes of a general nature, in force when the Revised Statutes take effect, and which are not included herein, or which are not hereby expressly continued in force, are hereby repealed.''

So that, without question and without doubt, long before the said District Court of Eastland County was convened in special session under the terms of Judge Blanton's order, copied above, all those articles of the Revised Statutes of 1895, which required previous notice of the time and publication, convening the District Court in special session, were expressly repealed by the Legislature.

In our opinion, therefore, there can be no doubt but that no notice whatever, and no thirty days time, or any other time, is required to be given and published of the convening of any speical term of the District Court in this State, and in our opinion the district judge can make any order at any special term of the District Court that he could make at any regular term of the court, and, hence, that he could make the order changing the venue in this case which would be perfectly valid whether he transacted any other business at said special term or not. Ex parte Martinez, 66 Tex. Crim. Rep., 1, 145 S. W. Rep., 959; Ex parte Boyd, 50 Texas Crim. Rep., 309; McIntosh vs. State, 56 Texas Crim. Rep., 134; Ex parte Young, 49 Texas Crim. Rep., 536.

Appellant in his brief cites us to Jowell v. Coffee, 132 S. W. Rep., 886, wherein the Court of Civil Appeals at Fort Worth in a civil case on October 29, 1910, held that the said Act of the twenty-ninth Legislature of 1905, p. 116, did not repeal the said articles of the Revised Statutes of 1895, requiring thirty days notice and the publication thereof as a prerequisite to a valid special term. Whether that decision is correct or not is unnecessary for us to determine, because we apprehend that neither that court nor any other of the Courts of Civil Appeals, nor the Supreme Court, would now hold since the adoption of the Revised Statutes of 1911, and the express repeal of Articles 1114 to 1116, inclusive of the 1895 Revised Statutes, which required notice, publication, etc., that any thirty days notice or any other time was necessary to be given and published as a prerequisite to the legally convening of a District Court in special term. As the Revised Statutes now are the case of Jowell v. Coffee, supra, has no application.

We can not understand how it can be contended from this record that the order of the court changing the venue in this case from Eastland to Shackelford County is void because this case was pending on appeal here when the said order convening the District Court of

Eastland County in special session, was made. We judicially know that the former appeal in this case was decided and this cause reversed on February 7, 1912; that no motion for rehearing was made in this court; that the mandate in this case on the former appeal was actually issued from this court and sent to the lower court on February 19, 1912. The order of February 12, 1912, by Judge Blanton convening the District Court of Eastland County, made no order whatever in this case. It did not pretend to make any order therein as an inspection of it will show. It specifically recites, as one of the facts, that this case had been reversed "and that the mandate in the same would have been duly returned to this court by the time hereinafter mentioned," which time hereinafter mentioned was, as the order shows, February 24, 1912. And further said order recites as a fact that said court was convened in special session on February 24, 1912, "only for the purpose of disposing of said two cases above mentioned." Clearly and unquestionably the order convening said court in special session in no way then made any order whatever in this case, but provided for the convening of the court so that on February 24, 1912, an order could, and would then be made.

Then the order of said court made and entered at said special term in open court on February 24, 1912, is as follows:

"Now on this the 24th day of February, 1912, during the 8th week of the regular time allotted by law for holding the regular term 1912 of the District Court of Eastland County, Texas, court having been regularly convened by previous order of this court entered upon the minutes, and opened by call of the sheriff, above case was duly called when appeared the defendant, Bill Mayhew, both personally and by his attorneys or record, and it appearing to the court this case has been twice before been tried in this county, at each of which trials there was a large crowd of people from different portions of the County, the courtroom being crowded both on the lower floor and in the gallery the first trial resulted in a hung jury and the second trial which was had on January 11, 1910 resulting in a conviction, since which time this case has been in the Court of Criminal Appeals until recently when the mandate was returned into this court; and it further appearing to the court that this is the last day (it being Saturday, February 24, 1912) upon which business may be transacted during the regular January term, A. D. 1912, of the District Court of Eastland County, Texas, and that unless this case is transferred to some other county for trial both the State and the defendant will be deprived of a speedy trial as this case will then have to go over until the next regular term of this court which meets in July, as the regular term of the District Court of Taylor County will convene next Monday, February 26, 1912; and it further appearing to the court that because of the prominence of both the defendant and the deceased, and their many friends, and the notoriety given this cause by the two for-

mer trials and the results thereof, it will be difficult to obtain another jury that would be fairly impartial, alike to the State and the defendant, it is the opinion of the court, on his own motion that this case should be transferred to another county. And court meeting in Albany, of Shackelford County, before it meets either in Stephens or Callahan Counties it is ordered and adjudged and decreed by the court that the venue of this case be and the same is hereby changed from the District Court of Eastland County, Texas to the District Court of Shackelford County, Texas, to be tried at the courthouse in Albany, Texas, on Tuesday, April 16, 1912, at 8:30 o'clock a. m., the defendant having heretofore been duly arraigned on the indictment charging him with murder and his plea of not guilty having heretofore been entered of record and all of his special pleas having been heard and determined.''

Then the order further directs all witnesses to appear at Albany, in Shackelford County, at the time set for the trial of said case, fixes the amount of the bond of the appellant and shows that he entered into recognizance to appear in Shackelford County at the time and place fixed in said order. It is unnecessary to copy that part of said order. An inspection of the order of the change of venue, just above copied, will show that it specifically states that the mandate from this court to that court had been returned into that court. The mandate having issued from this court on February 19th, we know, as reasonable men, that two days time would unquestionably be ample time for the mandate to reach that court from this, and while the specific date on which it was filed in that court is not made to appear, there can be no question whatever but that it had reached that court and been filed therein before February 24, 1912, the date of the convening of said court in special term and the making of the order changing the venue therein. Again, the judge in approving appellant's lengthy bill of exception to the said order changing the venue, specifically states in explanation and qualification thereof, that the mandate was returned into that court from this court. Again, appellant's able and skillful attorneys in no way, and nowhere, claim, or intimate, that the mandate had not been returned from this court and filed therein at and before the time the order changing the venue was made. Certainly, if such had been the fact they would in some way, somewhere, have raised the question and there can be no doubt but that if they had, the district judge would have sustained the point and made no order, and would not have violated that provision of the statute to the effect that while the cause is pending in this court the lower court has no authority or right whatever to make any order therein.

So that, in our opinion, all that portion of Presiding Judge Davidson's opinion contending that the order changing the venue was void, because the lower court had no jurisdiction on account of the order being made before the mandate was returned and filed therein, has

no application whatever to this case, and it is, therefore, unnecessary for us to further notice that point.

This brings us to the question of the right of the district judge of his own motion to change the venue from Eastland to Shackelford County. In support of appellant's plea to the jurisdiction and his resisting that order changing the venue, he introduced several witnesses whose testimony in the most favorable light for appellant would be construed to tend to show that there was no necessity for such change. The State introduced no testimony on the subject. The court was acting and did act, in changing venue, on his own motion, as he had the right to do. It is unnecessary to recite the evidence of appellant's witnesses on this point. A careful consideration of it all is summed up in the fact that their testimony tends to show that in *their opinion* a jury to try this case could be procured in Eastland County. It all shows, however, that the deceased and the appellant's family, especially, were prominent people in that county; that the killing of deceased excited a great deal·of interest and much more than usual at the time; that the families of these parties were influential; that the newspapers all over the county had had more or less to say about the killing. That two trials of the appellant had already been had in that county, and it is evident, especially on the second trial, trouble was had in securing a jury; that a great many people from the different portions of the county had attended both trials, and a great deal of interest was taken all over the county, by the people thereof.

The Legislature has expressly given the judges of the District Courts specific and ample authority and power, of their own motions, to change the venue in any case. Article 626, Code Criminal Procedure, is: ''Whenever in any case of felony the district judge presiding shall be satisfied that a trial, alike fair and impartial to the accused and to the State can not, from any cause, be had in the county in which the case is pending, he may, upon his own motion, order a change of venue to any county in his own, or in an adjoining district, stating in his order the grounds for such change of venue.'' This court has repeatedly construed and discussed this article of the procedure. It is unnecessary to cite all of the cases thereon. In Bohannon v. State, 14 Texas Crim. App., 271, this court, through Judge Willson, said: ''We are of the opinion, and so hold, in accordance with the former decisions of this court, that under Article (576) 626 of the Code of Criminal Procedure, which we have quoted, the judge had the authority, of his own motion, to send this case for trial to Austin County. He was clothed with this discretion by the express and unqualified words of the law, and this law was enacted under the express sanction of the Constitution. (Const., art. 3, sec. 45.) It is true that this discretion is a judicial, and not a personal one (Walker v. The State, 42 Texas, 360; Dupree v. The State, 2 Texas Crim. App., 613); yet, it being a discretion created and confided by the law, it

will not be revised by this court in the absence of any showing that it has been abused to the prejudice of the defendant. Such has been the uniform practice of this court, established by numerous decisions, and from which we see no reason to depart. (Noland v. The State, 3 Texas Crim. App., 598; Johnson v. The State, 4 Texas Crim. App., 268; Labaite v. The State, 6 Texas Crim. App., 257; Daugherty v. The State, 7 Texas Crim. App., 480; Cox v. The State, 8 Texas Crim. App., 254; Myers v. The State, 8 Texas Crim. App., 321; Grissom v. The State, 8 Texas Crim. App., 386; Webb v. The State, 9 Texas Crim. App., 490.)

"It has been ably argued by counsel that it is dangerous to the liberties and rights of the citizen to confide to its district judges such unrestricted power as is conferred by the broad and unqualified language of Article (576) 626 above quoted, and that it should be limited by the provisions of Article 581, following it. We do not regard Article 581 as being restrictive of the powers conferred by Article 576, and whether or not the power complained of is a dangerous one to be vested in district judges is not a question for this tribunal to determine." Again, Presiding Judge Davidson, for this court, in Lacy v. State. 30 Texas Crim. App., 127-8, said: "The granting or refusing the application rested in the sound discretion of the trial court, and on appeal the action of said court upon such application will not be revised unless it should appear that said discretion has been abused. Martin v. The State, 21 Texas Crim. App., 1; Pierson v. The State, 21 Texas Crim. App., 14; Scott v. The State, 23 Texas Crim. App., 521; Meuly v. The State, 26 Texas Crim. App., 274."

In our opinion, it is nowhere, and in no way, shown in this record that the trial judge abused his discretion in such a way as would authorize or permit this court to reverse the case, because he changed the venue. For other authorities see sec. 661, p. 424, of White's Ann. C. C. P., and sec. 200, Branch's Crim. Law of Texas.

There can be no question but that the district judge, the judge of said court, who was the judge thereof at the time the killing in this case occurred, when the indictment was found and when both previous trials of this case was had, was very much more competent to tell and to know whether a trial, alike fair and impartial to the State and the appellant, could be had in Eastland County and a proper jury procured therein, than either or all of the witnesses on that point who testified for the appellant. He acts in this, as in every other matter, under the sanction of his official oath. He is presumed to act, and we have no doubt in this case did act, fairly and impartially, and the record does not suggest in any way that his action was personal or arbitrary in an illegal sense, and it does not in any way indicate that he unjustly or otherwise usurped any power or authority in changing the venue and that he in no way acted tyranically, but that his action was that of a fair and impartial judge and in an entirely judicial way and manner. So that, in our opinion, the record in no way discloses

that the order changing the venue of the trial of this case was otherwise than entirely legal, proper and valid.

Appellant's bill of exception No. 3, after giving the number of the cause, the court and the date, is as follows:

"Be it remembered that on the trial of the above entitled cause the State was permitted to prove by the witness Bob Agnew over the objection of the defendant that he was in the wagon yard at the time of the difficulty between the defendant and deceased and that he saw Jim Mayhew go to the corner of the Gracy & Thomas store building, near where the deceased was laying in the arms of Ike Clarke, and put or secrete a dirk knife or hollow ground razor in a hole in the wall of the building near where he was standing. To the admission of said evidence defendant objected unless it could be shown that the defendant was present, and the court overruled said objection and admitted said evidence the defendant expected to said ruling and herewith tenders his bill of exception and asks the same may be signed and made a part of the record in said cause, which is accordingly so done with this explanation, viz.: Said act was clearly a part of the res gestae occurring within a few seconds after defendant stabbed deceased and after testimony showed that at said time the defendant was standing just a few feet away from Jim Mayhew, and that said Jim Mayhew and defendant then walked away together." This bill is wholly insufficient under all the rules to require this court to pass upon the question. Conger v. State, 63 Texas Crim. Rep., 312, and cases cited therein, and cases also collated under sections 857 and 1123 of White's Ann. C. C. P.

Even if we consider this bill it presents no reversible error whatever. The only objection to the admission of the testimony was "unless it could be shown that the defendant was present." The qualification by the judge of the bill in substance and in effect, as quoted above, meets this objection on two grounds: First, he shows that it was a part of the res gestae of the transaction and, second, it in substance and in effect shows that the appellant was present. Jim Mayhew was appellant's son and was the person to whose relief appellant claims to have gone at the time he killed the deceased, and Jim Mayhew was the party with whom the deceased was having a fight at the time appellant killed the deceased. There can be no question that the whole record in this case shows that appellant was present at the time this act was done by Jim Mayhew.

There was no error in the court, on the objection of the State. refusing to permit Dr. Jones to state the mental condition of appellant when he, Dr. Jones, first saw him in the Mayhew building, as shown by appellant's 4th bill, to the effect that he, appellant, "seemed to be very much distressed." The court in allowing this bill qualified it by stating that such testimony was clearly no part of the res gestae; that the witness testified that he received a call to attend the deceased, who was dead when he reached him, and that it was twenty or twenty-

five minutes thereafter before the witness saw the appellant, and the evidence did not disclose how much time may have elapsed between the time of the homicide when the witness received said call. The appellant, accepting this bill thus qualified, is bound thereby.

Neither does appellant's bill 5-a show any error whatever in the court's permitting the State to cross-examine Aaron Mayhew, defendant's witness, and show thereby that before the homicide Mayhew & Co., a corporation, had sued the deceased on a debt owed by him to the corporation, and that appellant owned stock in such corporation and was interested in and worked for it. The court in his qualification of said bill shows that just about an hour before the homicide, appellant told Hamby that deceased owed $400 or $500 which appellant had dug out of the ground and that the fight with Aaron Mayhew arose because of this; that deceased could not ride around on his money; that he was a damnder son-of-a-bitch than Bill Hudgens because Bill Hudgens would pay his debts and that he would cut deceased's damned guts out.

Neither does appellant's bill, as qualified by the court, show any error in permitting the testimony of what occurred at the barber shop immediately preceding and at the time of the fight between deceased and Aaron Mayhew.

By another bill it is shown that after the reputation of Avener Mayhew, one of appellant's witnesses, for truth and veracity had been attacked by the State by proving contradictory statements made by him, appellant offered to prove by several witnesses that they were acquainted with the reputation of said witness for truth and veracity and that it was good. This bill shows no error whatever as qualified by the court, because it is shown that the State did not attack the general reputation of appellant's said witness and made no attempt whatever to prove that it was bad and that the State admitted that his general reputation for truth and veracity was good.

By another bill it is shown that after the jury had brought in their verdict and it had been received and the court had rendered judgment thereon, while they were still in the jury box and before they were discharged by the court, the court said to them:

"Gentlemen of the Jury: Before discharging you, I will make one suggestion. Sometimes counsel for the defendant, in their zeal for their client, will try to discover some improper conduct on the part of the jurors, and get statements from them to use in their motion for a new trial. There is nothing wrong in this, for a good attorney should do everything in his power legitimately for his client. You have a perfect right to tell counsel anything you wish, and to give counsel any statement you may wish, but my suggestion is, that when you do it, be sure that what you say is absolutely true, for you would not want to accuse your fellow jurors of any act of impropriety and probably get him punished unless he was in fact guilty and deserved some punishment." No injury whatever is shown to appellant by

what the court said in this matter either by said bill or otherwise. The appellant in no way claims that the jury in any way acted improperly or that any juror failed or refused to give appellant or his attorneys any information whatever about what they had done as jurors. No possible injury to appellant is shown by these remarks of the court.

The bill of appellant objecting to some testimony of a threat by the appellant against the deceased, testified to by Joe Burkett, as qualified by the court, shows no error whatever. The court in qualifying the bill says that this threat by appellant against deceased occurred just a few hours before the homicide. Aaron Mayhew testified that his father (appellant) was mad with deceased because deceased and himself had had a fight. Hamby testified that appellant told him all about his fight and called deceased a damned son-of-a-bitch and said he would cut deceased damned guts out, and other evidence clearly showed that this threat was directed towards deceased.

These are all the matters raised by this record necessary to be passed upon by us, except some complaints of the court's charge and the refusal of the court to give three special charges requested by appellant.

As to the three special charges requested, the record shows only and solely that appellant requested them, quoting them, and the court refused them. In the motion for new trial the only complaint made is that the court erred in refusing to give that charge. There is no reason or necessity anywhere given or shown by the special charge itself, or the motion for new trial, or elsewhere in the record, why such charge should be given, and we, even in examining the record, have failed to find why any or either of these charges should be given. Bird v. State, recently decided; Ryan v. State, 64 Tex. Crim. Rep., 628; 142 S. W. Rep., 878; Berg v. State, 64 Tex. Crim. Rep., 612; 142 S. W. Rep., 884. Besides, the charge of the court, together with the special charges requested by appellant, which the court did give, substantially and fully covers everything that was necessary or proper for the court to give on the subject. None of appellant's objections to the charge of the court present any reversible error whatever.

The judgment will be affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE (dissenting).—Appellant was convicted of manslaughter, his punishment being assessed at three years confinement in the penitentiary.

This is the second appeal of this case. On February 7, 1912, this case was reversed and mandate was issued on February 19th, the same month. On the 12th of February, 1912, the district judge, Thomas L. Blanton, entered an order as follows:

"It appearing to the court that the regular term of the January Term 1912 of the District Court of Eastland County, Texas, convened the first day of January, A. D. 1912, and by law could continue for

eight weeks, or until and including the 25th day of February, 1912, but that because all business then on the docket subject to trial had been disposed of on the 31st day of January, 1912, court then adjourned; and it further appearing to the court that since said adjournment the cases of No. 2540, The State of Texas vs. Bill Mayhew, and No. 2666, The State of Texas vs. Will Drake, have been reversed by the Court of Criminal Appeals and that the mandates in same will have been duly returned to this court by the time hereinafter mentioned, and it further appearing to the court that the said Will Drake is now in jail without bond and that he is now entitled to bail, and it further appearing to the court that a necessity will exist for transferring said two cases on change of venue to another county and that unless such orders are made during the regular eight weeks allowed by law for said January Term 1912, said two cases will have to lie over until the next regular term of court six months hence; thus depriving both the defendant and State of a speedy trial, it is therefore ordered that said District Court of Eastland County, Texas, convene in special session at the courthouse in Eastland on the 24th day of February, A. D. 1912, at 8:30 o'clock A. M., to resume business under the regular January Term 1912 of said court and during such regular term time and only for the purpose of disposing the said two causes above mentioned, at which time said two defendants, Bill Mayhew and Will Drake, are hereby notified to be present, and the clerk hereof will spread this order upon the minutes of said court and issue and have precept and copy of this order served upon Messrs. H. P. Brelsford and J. J. Butts at once and copy and publish in the Eastland Chronicle.

    "Done this February 12th, 1912.

                              Thomas L. Blanton,
                    Judge 42nd Judicial District of Texas."


By the terms of this order it will be noticed that the January Term of the District Court of Eastland County convened in accordance with the statute on the first Monday in January, 1912, which fell upon the first day of the month, and that it could continue for eight weeks, but in fact did close on the 31st day of January "because all business then on the docket subject to trial had been disposed of on the 31st day of January, 1912, court then adjuorned." It further recites that it appeared to the trial judge that since the adjournment of his court two cases, No. 2540 against this appellant, and No. 2666 against Will Drake, had been reversed by the Court of Criminal Appeals, and that mandates would be returned into his court by the time hereinafter mentioned, which was the 24th of February, this order being entered on 12th day of February. It is further recited that "a necessity will exist for transferring said two cases on change of venue to another county and that unless such orders are made during the regular eight weeks allowed by law for said January Term 1912, said two cases will

have to lie over until the next regular term of court six months hence, thus depriving both the defendant and State of a speedy trial; it is therefore ordered that said District Court of Eastland County, Texas, convene in special session at the court house in Eastland on the 24th day of February, A. D. 1912, at 8:30 o'clock a. m., to resume business under the regular January Term 1912 of said court and during such regular term time and only for the purpose of disposing of the said two causes above mentioned,'' etc. When this called resumption of the defunct term of court acted upon this change of venue there was an exception reserved not only to the change of venue but for many other reasons which are not necessary here to state. In the qualification to this bill the judge recites that the time for holding the aforesaid regular term is eight weeks, and that it could continue until the night of the 25th of February, 1912, but there being no further business to be transacted, the minutes were signed and approved, and court adjourned on January 31, 1912. Subsequently the mandates of the Court of Criminal Appeals reversing and remanding the two cases were returned into that court. Among other things in the qualification it is stated by the judge as follows: *"And February 24, 1912, when said court convened, it was then a part of the regular term 1912 of same. The clerk of the District Court of Eastland, Texas, will file this bill as a part of the record in this case. Done this February 24, 1912."* So I think it is conclusively shown by the statement of the judge, by his order and qualifications of the bill and the conceded facts, although it could last eight weeks, the court did not call a special term, and that there was not called a special term of the court, but merely a resumption of the regular term. This is the declaration of the judge who called the court. Instead of continuing the eight weeks until the 26th of February, it was adjourned on the 31st of January, and the minutes were approved in the regular manner by the trial judge, and that this order calling his court together, which was issued on the 12th day of February, 1912, *was a reopening of the regular term and not a special term called under the statute.* It was expressly called by the judge as a reopening or resumption of the regular term. Therefore, all questions which might arise under the theory that it was a special term of court are not here involved. I am led to believe that the trial judge *knew his purpose in calling the court and the reasons for it, and he emphasizes the matter by stating that it was a resumption or reopening of the regular term* and not a special term. There is a difference between a regular and a special term of court. It is unnecessary to undertake to draw the distinction; they are made so by the Constitution and the statute, and the line of demarkation is definitely fixed. I hardly think it necessary to cite authorities or discuss the question that the district judge had no authority to open a regular term after it was closed—finally adjourned. It could have continued for the entire eight weeks, and the court could have taken a recess from day to day or longer and continued the regular term in

vogue, but this was not done; it was closed finally. This eliminated
all authority of the judge to reopen the regular term. Special terms
are authorized to meet contingencies arising after the adjournment of
the regular term; however, it is unnecessary to go into a review and
reasons why special terms are authorized. The authorization of spe-
cial terms would probably be unnecessary if the judge could open his
regular term at any time he saw proper. So I understand it to be
clear from this record that the *court did not call a special term, but
only reopened or undertook to reopen the regular term,* and this he
could not do, and from this viewpoint any order he might make would
be ultra vires and of no effect; in fact and in law all orders entered by
the judge under this call were void. It would follow, therefore, that
the order entered by the judge on the 12th of February calling the
court together on the 24th would necessarily be void. The transfer of
the case from Eastland to Shackleford County by virtue of this order
would therefore be a nullity. The District Court of Shackelford
County would, therefore, have no jurisdiction of the case, for the
reason the order changing venue was not authorized.

Viewed from another's standpoint, the order of the district judge is
void. The order of the 12th of February was made while this case
was pending in the Court of Criminal Appeals. While the judgment
of the lower court had been reversed on the 7th of February, the
mandate did not issue to the District Court until the 19th of February,
as this court judicially knows from its own records. What time it
reached the court is somewhat speculative, but it may have reached
that court before the 24th of February, the time the order was made
changing the venue. However that may be, the order on the 12th of
February being void, all subsequent actions in the matter based there-
on would be equally void, because they all depended upon that order.
Art. 884, White's Ann. Code of Criminal Procedure, reads as follows:
"The effect of an appeal is to suspend and arrest all further proceed-
ings in the case in the court in which the conviction was had until the
judgment of the appellate court is received by the court from which
the appeal is taken; provided, that in cases where, after notice of ap-
peal has been given, the record or any portion thereof is lost or de-
stroyed, it may be substituted in the lower court, if said court be then
in session, and when so substituted the transcript may be prepared
and sent up as in other cases. In case the court from which the ap-
peal was taken be not then in session, the Court of Appeals shall post-
pone the consideration of such appeal until the next term of said court
from which said appeal was taken, and the said record shall be sub-
stituted at said term, as in other cases." The effect of this statute is
to deprive the trial court of all authority to enter any order or take
any steps in regard to the appealed case until the judgment of the
Court of Criminal Appeals has been received by the court from which
the appeal was taken. The authorities are uniform and unbroken in
this interpretation or construction of this statute. In fact, the statute

needs no construction. The language is all sufficiently plain to construe or interpret itself. There has been some legislation which authorizes the filing of a recognizance or appeal bond, as the case may be, in this court where such instruments are held sufficiently defective to cause a dismissal of the appeal, but that has no connection with this matter, and possibly it might be said in scire facias cases some matters might be entered nunc pro tunc, but if such be the case it is based upon the theory that scire facias is civil case after forfeiture is taken on the bond. I mention these in passing so there will be no apparent conflict. I suppose, however, the legal fraternity would understand there was none without referring to those matters. In Nichols v. State, 55 Texas Crim. Rep., 211, in an opinion by Judge Ramsey, it was said, quoting approvingly another decision: "It would seem from a proper construction of this statute that, pending appeal to this court, the trial court from which said appeal is taken can take no steps with reference to the case until this court has finally disposed of said appeal, except where some portion of that record has been lost or destroyed after notice of appeal has been given." Again, it was stated and held in the case of Lewis v. State, 34 Texas Crim. Rep., 126: "This statute, as we understand it, deprives the trial court of all jurisdiction of the case except for the purpose stated, when the appeal has gone into effect. Whether the rule provided is beneficial is not for us to decide. It is the declared will of the legislative mind, and within the scope of the authority of that body to declare. It puts an end to the time when defective records can be amended pending appeal. This statute furnishes the rule of practice in such cases, and this court will adhere, to it." The same construction was announced in Quarels v. State, 37 Texas Crim. Rep., 362. See also Sheegog v. State, 39 Texas Crim. Rep., 126. In Saufley v. State, 48 Texas Crim. Rep., 563, it was held that motions amending original motion for new trial cannot be filed in the trial court after an appeal is taken. See also Reed v. State, 42 Texas Crim. Rep., 573. In many cases it has been held the court has no authority after appeal to enter recognizances nunc pro tunc. See Morse v. State, 39 Texas Crim. Rep., 566; Freshman v. State, 39 S. W. Rep., 1118; Quarels v. State, 40 Texas Crim. Rep., 353; Clay v. State, 56 Texas Crim. Rep., 515; Youngman v. State, 38 Texas Crim. Rep., 459; Estes v. State, 38 Texas Crim. Rep., 506; Dement v. State, 39 Texas Crim. Rep., 271; Donnelly v. State, 51 S. W. Rep., 228; Maxey v. State, 41 Texas Crim. Rep., 556. These cases passed on many questions arising after notice of appeal, each and all of them holding that after the jurisdiction of this court has attached no order can be made in the trial court of any character except as authorized by statute. Hinman v. State, 54 Texas Crim. Rep., 434. See also White's Ann. Crim. Proc., sec. 1236. It would seem unnecessary to cite authorities in support, of the announced proposition that the court below lost all jurisdiction while the case was pending in this court, and that it could not assume any jurisdiction in the case for any purpose until after

mandate of this court had been filed in the lower court. The statute and the cases make this rule absolute.

The action of the court to call a special session or reopen court was based upon the proposition that a speedy trial alike for the State and the defendant could not be had unless the court ordered a change of venue; that it would be six months before the District Court should again convene in regular session. The law does not authorize a speedy public trial for the State. The State is not on trial. The Constitution guarantees a speedy public trial to the accused. He did not seem to be anxious to have the trial in the manner indicated by the district judge. He was fighting the change of venue with considerable vehemence. As we understand the statute with reference to change of venue, it does not authorize the transfer of cases from one county to another on the ground of speedy public trial; at least not in this character of case. There is a statute of venue with reference to rape, but this is not a case of rape. This is a case of homicide, and the fact that the statute confines itself to questions of venue in rape cases under a given state of facts emphasizes the fact that homicide cases were not included. The inclusion of the crime of rape in that particular statute, and rape only, emphasizes the fact that other offenses were excluded.

A great deal of testimony was also introduced as to the condition of Eastland County with reference to this case, whether the State and defendant alike could have a fair trial. That seems to have gotten into the trial of the case on the 24th of February, at the time of the transfer on change of venue was made. It had not theretofore entered into or become a part of the case. The judge had not specified this as a reason for reopening his court. We have read the testimony in regard to the state of public opinion in regard to the case as evidenced by the witnesses, and fail to find any evidence in the case that showed otherwise than that an impartial trial could be had in the county. All of the witnesses who testified in regard to the matter, many of whom were officers, a majority of the witnesses were county officials, make it apparent that there was no basis for a change of venue for this reason. It was not even contended by the State that such a condition of affairs existed, but by the State that fact was denied. One of the private counsel for the prosecution testified in the case to this effect. The truth of the matter seems to be from the order of the court and all the record, that the transfer was made only for the purpose of having a more speedy trial of the case by transferring it to another county where court could be held before the Eastland District Court would be convened. If it was necessary to decide this question, we are of opinion the court erred in transferring it from this viewpoint. Moore v. State, 46 Texas Crim. Rep., 54. Change of venue by the judge is not arbitrarily confided to him or his discretion. His discretion is to be exercised in the interest of fair trial and impartial justice.

There are some questions presented, in my judgment, which would require a reversal, but I pass those without further discussion.

The judgment ought to be reversed and the case remanded.