## R. H. Moore v. The State.

### No. 2834. Decided March 25, 1904.

**1.—Change of Venue—Counter Affidavits.**

Where an application for a change of venue on the ground of existing prejudice is contested by counter affidavits of the State which do not attack the credibility of appellant's compurgators, or their means of knowledge, a demurer to the counter affidavits of the State should have been sustained.

**2.—Same—Nearest Courthouse.**

An application for change of venue to D. County on the ground of existing prejudice, in the absence of proper counter affidavits should have been granted, and the court had no authority to conclude upon the record before it, that similar conditions existed in D. County and to change the venue to F. County, it appearing that such county was not one containing a courthouse nearest to the county from which the change of venue was asked. Distinguishing Bohannon v. State, 14 Texas Crim. App., 271.

**3.—Evidence—Orders of Change of Venue Not Admissible.**

The judgments, orders, decrees and proceedings had on the change of venue in the county from which the same was had are not admissible in evidence for any purpose upon the trial of the case.

**4.—Same—Confessions—Res Gestae.**

The declarations of accused five or six minutes after the homicide to a policeman, to whom he had given his gun awaiting the coming of the sheriff made without warning and in answer to questions were not res gestae, and inadmissible.

**5.—Same—Character of Deceased.**

Where the character of the deceased had not been placed in issue by appellant, evidence of the good character of deceased as a peaceable and law abiding man, etc., was inadmissible.

Appeal from the District Court of Fannin. Tried below before Hon. Ben H. Denton.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The testimony of the principal State's witnesses showed that appellant procured a gun and shells a short time before the homicide, saying he was going on a hunting trip. That on the day of the killing he was seen gun in hand walking along the street towards where deceased was, at a house which the latter had leased to Joe Brown, and deceased was there in front of the house at the gate, when appellant came up and immediately raised his gun; the witness Mrs. Joe Brown saying, "Look out for Mr. Moore, Mr. McLaughlin!" The latter thereupon turned and faced appellant, throwing up his right hand, holding the paling with the left saying, "Hold on; what have I done to you?" Appellant replied: "Enough, God damn you!" and fired. Deceased stood probably a second when he whirled and ran crying for help, when appellant fired the second shot. Appellant followed deceased and fired still another shot and then walked back to his house. McLaughlin died of the effects of the gunshot wounds inflicted by appellant soon after. Deceased had had a difficulty with appellant some time before he was killed and had shot at appellant with a pistol, and there was hard feeling between them; and there was some testimony as to threats made by deceased and of going armed to do appellant some injury. There was also some evidence that deceased was armed at the time he was killed.

Appellant testified in his own behalf, that he had procured the gun and shells to go hunting; that thereafter deceased had insulted his wife and that he took the gun and proceeded towards him to ask him to explain; that when he approached, deceased told him to stop, and threw his right hand down to his side; that appellant apprehended that deceased would shoot at him, as he had once done before, and then fired his gun.

The testimony is very voluminous, but the above statement with the facts as stated in the opinion will sufficiently explain the case.

*James E. Dudley, J. C. Hodges. B. B. Thurgeon. Bruce McMahan,* and *Fred. Dudley,* for appellant.—On question of change of venue: Bohannon v. State, 14 Texas Crim. App., 271; Cannon v. State, 56 S. W. Rep., 351; Davis v. State, 19 Id., 251; Pierson v. State, 17 Id., 468;

Rothschild v. State, 7 Texas Crim. App., 519; Webb v. State, 9 Id., 590; Cotton v. State, 32 Texas, 614; Lacy v. State, 30 Texas Crim. App., 119; Fryzell v. State, 30 Texas Crim. App., 420. On question of admitting orders on change of venue in evidence on trial: Shamburger v. State, 24 Texas Crim. App., 433; Long v. State, 17 Texas Crim. App., 128. On question of confessions: Arts. 789, 790, Code Crim. Proc.; Caps v. State, 48 S. W. Rep., 517; Phillips v. State, 35 Texas Crim. Rep., 480. On question of character of deceased: Graves v. State, 14 Texas Crim. App., 120.

*Howard Martin,* Assistant Attorney-General, *J. H. Lyday* and *J. C. Mende,* District Attorney, for the State.—On question of change of venue: White's Code Crim. Proc., arts. 613-619; Bohannon v. State, 14 Texas Crim. App., 271; Frizell v. State, 30 Id., 42; Smith v. State, 31 Texas Crim. Rep., 140. On question of confession: Powers v. State, 23 Texas Crim. App., 42; Weathersby v. State, 29 Texas Crim. Rep., 307; Miller v. State, 31 Texas Crim. Rep., 609; Darter v. State, 39 Texas Crim. Rep., 40. On question of character of deceased: Martin v. State, 70 S. W. Rep., 973.

DAVIDSON, PRESIDING JUDGE.—Appellant was indicted in Lamar County for the murder of McLaughlin. When the case was called for trial he filed an application to change the venue to Delta County, on the ground of existing prejudice against him in Lamar County. The court granted the application but changed the venue to Fannin County. The State's contest is supported by the affidavit of McQuistian, Ball and Humphreys. This affidavit states that the allegations in regard to prejudice set up by appellant is local, being confined principally to Paris, and is more against the crime charged than against appellant; that one of his compurgators is related to him—being his brother-in-law; and that said compurgators have not, as these affiants verily believe, any knowledge of such prejudice existing among the great majority of the citizens of Lamar County. This answer of the State was met by demurrer. Our statute provides that there may be a change of venue from the county of the alleged crime, or where the prosecution is commenced, where there is so great a prejudice against the accused that he can not obtain a fair and impartial trial. Appellant's application was based upon this ground. The statute further provides, that the credibility of the persons making the affidavit for the change of venue or their means of knowledge may be attacked by the affidavit of a credible person, and the issue thus formed shall be tried and determined by the judge; and the application granted or refused as the law and the facts warrant. It will be observed that the affidavit filed by the State does not attack the credibility of appellant's compurgators nor their means of knowledge. This must be done in order to raise an issue. Davis v. State, 19 Texas Crim. App., 201; Carr v. State, 19 Texas Crim. App., 635. We do not

believe anything could be added to the reasoning in the cases cited, and
they are conclusive of the question presented. Appellant was therefore
entitled to a change of venue, and the court erred in not sustaining his
demurrer to the affidavits filed by the State. This being true, it follows
that the court was in error in admitting testimony, there being no issue.
A bill of exceptions was reserved to this action of the court. The court
in the judgment or finding in regard to the application to change the
venue, recites that the conditions existed practically in Delta County
upon the issue involved as in Lamar County. This information, if true,
was derived from the testimony introduced on the contest. As the issue
was presented appellant was entitled to a change of venue to Delta
County. Upon another trial, if the motion to change the venue is again
presented and a contest should arise, and the evidence should disclose in
the opinion of the court that the fact of prejudice exists in Delta County,
so as to preclude a fair and impartial trial, then the statute under which
this application was made would require the court to change it to the
county containing a courthouse nearest to that of Lamar County, which,
under this record, would be Red River. The State relies upon the case
of Bohannon v. State, 14 Texas Crim. App., 271. In that case the court
found as a fact that, within the knowledge of the court, in Wharton
County, to which it was sought to change the venue, the same facts
existed; and therefore the venue was changed to Austin County; but
the court made no such finding in the case at bar, nor did he find that
the courthouse of Fannin County was the nearest to that of Lamar
County. If we look to the facts of the case, as developed by the contest,
there might be some rather cogent reasons why this case should not go
to Fannin County. The Bohannon case is not in point as we under-
stand this record; but the case is brought fairly within the rule laid
down in the Davis and Carr cases, supra.

During the trial, the orders, decrees, judgments and proceedings
entered in this case in Lamar County in regard to changing the venue
were offered to the court alone, and it seems not for the benefit of the
jury. Defendant objected to this, because these matters were inadmis-
sible for any purpose, and its only effect was to prejudice the jury
against defendant because the case had been removed. The bill is signed
with the qualification that the counsel for the State offered the orders
and decrees to the court alone, and in a rather undertone of voice; and
it was thought by the court that the jury would not have been informed
for what purpose the papers were offered, if appellant's counsel had not
gotten up and stated what these papers were. The court further states
that they were not read before the jury nor in the hearing of the jury,
but read by the court, etc. Just how far this may or may not have
prejudiced appellant we are not able to say, and perhaps it is not neces-
sary to discuss it in this case; but under the rule in Shamburger's case,
24 Texas Crim. App., 433, these proceedings were not admissible. To
say the least of it this was rather a peculiar proceeding. The court

fully apprised of all the proceedings in regard to the change of venue. The judge who tried the case in Fannin County was the same judge who granted the change of venue and entered up the orders and decrees in Lamar County; and the judgments, decrees and proceedings had on the change of venue in Lamar County were inadmissible in evidence for any purpose; that the court judicially knew of all these orders and decrees, and the jury were not entitled to know it.

The witness Anderson and Mrs. Crock were permitted to narrate before the jury statements made by appellant shortly after the homicide, perhaps within five or six minutes. Mrs. Crock stated that she heard defendant say to the policeman, "I have been tormented and deviled out of my life." "I don't know whether Mr. Moore said, 'I have shot him,' or 'I killed him.' I could not understand that part of it; but I heard him say very distinctly, 'I have been deviled and tormented out of my life.'" In reply to the question asked as to whether anyone had asked appellant the question, she stated: "Yes, the gentleman I supposed was a policeman—he had on his star and was an officer. But I did not understand enough to swear what the policeman asked him. I just heard a sound and that was Mr. Moore's answer." Anderson (who seems to have been the policeman having appellant in charge) testified that within about five or six minutes after the shooting he found defendant standing on his (defendant's) porch at home; that he had a gun. "Q. Did you arrest him? A. Well, he did not want to surrender to me. He said he wanted to wait for the sheriff; he said I was a policeman, and it was the sheriff's business, and he had rather surrender to the sheriff. Q. Then you had not arrested him? A. No, sir. Q. Didn't he give you his gun and say he would wait for the sheriff? A. Yes, sir. Q. And you were there with him with his gun? A. Yes, sir; he gave me his gun when I asked him for it. Q. He knew you were an officer? A. Yes, sir; I suppose so; I had on a uniform and my insignia of office. Q. What did you say to him? A. I believe I spoke to him, and I hated that it had happened. I told him I was sorry what had happened, and went on, and talked with him awhile; and asked him to go with me. He said no, that he had rather go with the sheriff; that it was the sheriff's business, and went on to say that he was sorry that he had it to do; but the worst thing he hated about it was on account of his wife. Q. Did you ask him whom he had killed? A. Yes, sir. Q. Now, what was his reply to that? A. He said McLaughlin. Q. Now what did he say that he killed him for? A. He said that he had been worried and dogged after and worried until he just could not put up with it any longer, or something like that, as well as I can remember. He said that the worst thing he hated about it was on account of his wife, it would worry her." (By Mr. Lyday): "Q. Now, Mr. Anderson that is exactly what we wanted to find out." Objections were urged to this testimony, which we believe were well taken. Appellant was clearly under arrest at the time of making the statement testified by both of

these witnesses. He had not been warned. The statements were not res gestae. They were brought out in answer to questions. They were not outspoken spontaneous statements of appellant.

Nor do we believe that the evidence of the good character of the deceased as a peaceable and law-abiding man should be introduced in evidence; nor the further testimony that he was courteous and kind and respectful to ladies. The character of deceased had not been placed in issue by appellant, as we•understand this record. Before evidence of good character of deceased can be introduced by the State, the defense must first attack that character.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*