PAUL KEITH v. THE STATE.

No. 3174.   Decided May 16, 1906.

**1.—Murder in the First Degree—Jury and Jury Law—Special Venire—Talesman —Statutes Construed.**

Under the Act of the Twenty-ninth Legislature it is provided that after the exhausting of a special venire, an additional venire if necessary shall be drawn from the list selected by the jury commissioners, and it was error upon trial for murder for the court, after the special venire drawn had been exhausted, to instruct the sheriff to summons talesmen.

**2.—Same—Evidence—Reputation of Deceased.**

Upon trial for murder where defendant had not put in evidence the reputation of deceased, it was error to permit the State over defendant's objection to introduce testimony that the reputation of deceased was that of a quiet and peaceable citizen and not a dangerous man.

**3.—Same—Irrelevant Testimony.**

Upon a trial for murder it was error to permit the State to introduce the county physician to testify that he had examined the wife of deceased and that he found her nervous but not sick; the said wife of deceased having testified upon trial of defendant and stated that she was nervous on account of the shock and, etc., she received at the death of her husband.

**4.—Same—Age and Intelligence of Witness.**

Upon a trial for murder, where the court rejected the testimony of a child only eight years of age because in his judgment the witness did not show sufficient intelligence, and the facts are not stated in the bill of exceptions which bear upon this statement of the court, the matter cannot be reviewed.

**5.—Circumstantial Evidence—Charge of Court.**

Upon trial for murder, where defendant admitted the killing and the circumstances placed the two parties on the gallery together in close juxtaposition to the killing, and defendant did all the shooting, there was no error in not submitting a charge on circumstantial evidence.

**6.—Same—Impeaching Testimony, Limiting Effect of.**

Upon trial for murder where defendant's witness testified that deceased had struck her, and she denied the statement that she had previously said that her deceased husband had never struck her, and witnesses were placed upon the stand to prove that she did make such statement, the court should have limited the testimony to the issue of credibility.

**7.—Same—Charge of Court—Imperfect Self-Defense.**

See opinion for facts which did not require the court to submit a charge on the law of imperfect self-defense.

**8.—Same—Charge of Court—Manslaughter—Anticipated Danger—Right of Going Armed.**

Upon a trial for murder, where the evidence showed that the defendant and deceased were brothers-in-law and strangers; that defendant called upon deceased to talk with him in a peaceable and quiet manner about the mistreatment of a relative, whereupon deceased jumped up throwing his hand in the direction of his pocket where he had a pocket knife and advanced towards defendant, who remonstrated but finally drew his pistol and fired; having armed himself to guard against anticipated danger, the court should have charged on manslaughter. Following Shannon v. The State, 35 Texas Crim. Rep., 2.

**9.—Same—Defendant's Testimony—Criminal Law.**

In criminal cases the law should be applied to any and all of the issues suggested by the testimony, and it is immaterial from what source the testimony comes; and upon a trial for murder it was error to gauge all charges representing defendant's legal rights upon defendant's personal testimony.

Appeal from the District Court of Eastland. Tried below before Hon. J. H. Calhoun.

Appeal from a conviction of murder in first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Scott & Brelsford* and *Monta J. Moore,* for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is a conviction of murder in the first degree, the punishment being fixed at confinement in the penitentiary for life.

Appellant and deceased were brothers-in-law, and had never met prior to a few minutes before the killing. On the morning of the homicide appellant went to the residence of deceased (his brother-in-law) for the purpose of talking with him about the treatment by deceased of his mother-in-law (who was appellant's mother) and for the purpose of getting him to desist in such treatment, and permit her to visit his sister, wife of deceased. There had been considerable trouble between deceased and his wife. The evidence shows that when appellant reached the residence, and after being introduced to deceased, they sat awhile conversing on the gallery. Appellant mentioned his mission; that he had come there, not for the purpose of talking with him about his family troubles, but to talk with him in a quiet and friendly way about his treatment of his, appellant's mother. As soon as this statement was made deceased got up from his position, where he was sitting on a cot, and started in the direction of appellant, with his right hand reaching towards his pocket, where he had a knife, remarking, "If that is your game, I will kill you," accompanying the expression with an oath. Appellant told him to stand back; he did not want to hurt him; did not want any trouble with him; not to come on him. Deceased continued to come until he came to close quarters. Four shots were fired; and deceased was killed. Some of the shots were suf-

ficiently close to powder burn deceased. Defendant was a man weighing 165 to 175 pounds, and deceased about 125 pounds. Deceased was a resident of Galveston, and had gone into Stephens and Eastland Counties to visit his father, mother, and brothers and sisters, and for the further purpose of recuperating from an accident, in which he had broken his collar bone near the shoulder, and before it had entirely healed, by lifting some heavy weight, broke it again. This rendered his left arm practically unfit for use, and had just been taken out of plaster-paris, a day or two before the tragedy.

When the case was called for trial, motion to place Mrs. Grantham (wife of deceased) on trial first was overruled. The prosecution against her was dismissed. Under the view we take of this record we deem it unnecessary to discuss that question. Nor will the action of the court refusing a continuance be discussed.

Error is assigned upon the ruling of the court during the empanelment of the jury. There is only one phase of this we desire to notice, as the other phase cannot arise upon another trial. The question we desire to notice is this: After exhausting the special venire drawn, the court instructed the sheriff to summon as talesmen something over one hundred jurors. This order of the court was executed by the sheriff. This is clearly error. The act of the Twenty-Ninth Legislature, page 17, provides that after the exhaustion of the special venire, in the manner therein provided, an additional venire if necessary shall be drawn from the list selected by the jury commissioners. The authority heretofore existing for the sheriff to summon talesmen under the direction of the court is repealed by this act, and the only method now by which special venires can be obtained is by drawing those jurors who have been provided by the terms of the act of the Twenty-Ninth Legislature. There is no authority under our law, as it now exists, which would authorize the sheriff to summon talesmen in capital cases, except as selected by the jury commissioners and drawn by the clerk under the direction of the court. This is such error as requires a reversal of the judgment.

The State was permitted, over appellant's objection, to introduce evidence that deceased's reputation was that of a quiet and peaceable citizen and not a dangerous man. Appellant did not put in evidence the reputation of deceased. This question was raised by several bills of exception, and we deem it unnecessary to review all of them. In cases of this character, the State cannot introduce evidence of the reputation of deceased as being good and law abiding, or inoffensive, unless that reputation has been attacked by the accused. Gregory v. State, just decided, which collates the authorities.

Dr. Boon was permitted to testify that, as county physician of Eastland County, he had, at the instance of the court, visited Mrs. Grantham, while confined in the county jail of Eastland County, and also after she had given bond and gone to Stephens County during the present term of the court, with the view of ascertaining the physical

condition of Mrs. Grantham; that he found her in a nervous condition. He was then asked by the prosecution if he at any time considered her a sick woman. To which witness answered that he had not, and further testified that he did not consider her sick. Many objections were urged to this testimony, which we think are well taken. Mrs. Grantham so testified, but we do not understand what relevancy it could have had upon the case, that at the time of the trial, she was or was not sick or nervous. She was present and testified. It is true that she stated that she had been sick and was nervous on account of the shock she may have received at the death of her husband, she being nearby at the time; but we do not see what relevancy this could have had, one way or the other. However, we do not think it was admissible testimony.

Error is assigned in regard to the ruling of the court rejecting the testimony of Paul Baird (child of the widow of deceased). The court rejected this testimony and explains that the child was only 8 years of age, and in his judgment did not show sufficient intelligence to become a witness. The facts are not stated in the bill which bear upon this statement of the court, and appellant excepted. The statement of the court is made without the evidence before us which tended to disparage the intelligence of the child, and we are unable to review the matter. If upon another trial the facts are such as to show sufficient intelligence on the part of this boy, his testimony should be admitted, because, if true, it is of a material character.

We do not believe that the court erred in failing to charge on circumstantial evidence. Appellant admitted the killing. The circumstances place the two parties on the gallery together, and appellant in such close juxtaposition to the killing that, even without the confession, it would not, in our judgment be a case calling for a charge on circumstantial evidence. He did all the shooting.

Evidence was introduced by the State of an impeaching character in regard to Mrs. Grantham, widow of deceased. She had testified for appellant, and to facts which showed that deceased had been cruel and harsh to her. She was asked by the State, on cross-examination, if she had not made the statement to the effect that her husband had never struck her. She had testified he had struck, beat and choked her. She denied making the statement that her deceased husband had never struck her. Witnesses were placed upon the stand to prove that she did. It is contended that the court should have limited the testimony to the issue of credibility, etc. We believe upon another trial, that the court should restrict the impeaching testimony of this character wherever it occurs in the testimony.

We are of opinion that the court did not err in failing to charge the law of imperfect self-defense.

The court should have charged on manslaughter. This case is brought squarely within the rule laid down in Shannon's case, 35 Texas Crim. Rep., 2. We have made a sufficient statement of the facts,

without going into the details, to show that manslaughter is in the case. Perhaps a short recapitulation of some of the salient features bearing upon this issue may not be out of place. Appellant and deceased were brothers-in-law and strangers. Appellant's testimony shows that he went to visit his brother-in-law, to talk with him in a peaceable and quiet manner about the mistreatment of his mother. Deceased immediately became enraged, jumped up and approached him with the statement, "If that is your game, I will kill you"; and placed his hand in the direction of a pocket, where the testimony shows he had a pocket-knife. Appellant warned deceased not to approach him, that he did not want to hurt him. He continued to approach appellant, who jerked his pistol, and fired and continued firing. There is no question of the fact that appellant had the right to expostulate with his brother-in-law about the treatment of his mother or sister, and he had the right to go to him in a peaceable and quiet manner for that purpose; and he had the right to arm himself to guard against anticipated trouble and danger. Shannon v. State, supra. Appellant was a large man, weighing 165 to 175 pounds; deceased a small weakly man, and just recovering from a serious accident, and totally unable to physically contend with appellant. Such an attack under these circumstances, whether the jury believed deceased was reaching for his pocket-knife or not, would require a charge on manslaughter.

From some of the statements incorporated in the record, the court was laboring under the impression that appellant's legal rights would be controlled and gauged by his personal testimony, and all of the defensive charges, or those favorable to him, should be in accordance with that idea. This is not the law. See Sowell v. State, 32 Texas Crim. Rep., 482. To lay down such proposition, would be more than dangerous, not only to the defendant, but to the State, and the enforcement of the criminal law. Such conclusion would be based upon the absolute accuracy and truthfulness of the appellant's testimony to the exclusion of the other evidence. If it should be held that appellant's testimony makes the only criterion of defensive matter, that idea would be predicated upon the truthfulness of his statement. If that were true, the jury would be compelled to take that view of it, and decide the case as defendant might testify. The rule is, that the law should be applied to any and all of the issues suggested by the testimony, and it is immaterial from what source the testimony comes, if it is before the jury the law should be applied to those issues.

There are some other questions suggested for discussion with reference to the court's charge defining some of the terms in regard to an unlawful killing, matters of mitigation, etc. Upon another trial, the giving of the charge of manslaughter would eliminate some of these matters, and what has been said sufficiently indicates to the court our views in regard to the law as it ought to be charged.

For the errors discussed the judgment is reversed and the cause remanded.                                    *Reversed and remanded.*