HORACE HELTON v. THE STATE.

No. 7117.    Decided May 16, 1923.

**1.—Manufacturing Intoxicating Liquor—Requested Charges—Burden of Proof.**

A requested charge to the effect that the indictment having alleged that the whisky was not being manufactured for medicinal, mechanical, scientific, or sacramental purposes, the burden was on the State to prove it; and it had failed to do so, and an acquittal was demanded, was correctly refused. Following Robert v. State, 90 Texas Crim. Rep., 133, and other cases.

**2.—Same—Requested Charge—Manufacturing Liquor.**

Where the defendant requested the court to charge the jury if he was preparing to make whisky, but had not actually begun the making of it when arrested, he should be acquitted, which the court submitted to the jury, there was no error in refusing another charge that the mere possession of the equipment would not justify a conviction.

**3.—Same—Charge of Court—Peremptory Instructions.**

Upon trial of unlawfully manufacturing intoxicating liquor there was no error in refusing a peremptory instruction to acquit under the facts in the instant case.

**4.—Same—Requested Charge.**

Where the requested charge with reference to equipment in defendant's possession, had no basis in the evidence, the same was correctly refused.

**5.—Same—Circumstantial Evidence—Charge of Court.**

Upon trial of unlawfully manufacturing intoxicating liquor, there was no error in the court's refusal to submit the requested charges on circumstantial evidence because the defendant was charged with making one quart of whisky when the direct proof showed that he only made one pint.

6.—Same—Evidence—Conversation.

Having gone into the matter by the defendant it was pertinent for the State to develop all of the conversation on the same subject; besides, practically the same evidence had gone into the record without objection, and there is no reversible error.

7.—Same—Rehearing—Requested Charge.

Where, upon trial of unlawfully manufacturing intoxicating liquor, the officer testified for the State that when he ereached the still the whisky was dripping from the pipe into the glass container which had in it about a pint of liquor, etc., there was no error in refusing a requested charge to the effect that if the equipment found in the defendant's possession was not capable of being used for the manufacture of whisky, etc.; under Article 743, C. C. P.

8.—Same—Defensive Theory—Impeaching Witness.

An affirmative defensive theory cannot be based on testimony which is admissible only for the purpose of impeaching the State's witness, and where the defense had gone into the conversation the State was entitled to it all on the same subject, besides the same character of testimony had been admitted without objection.

Appeal from the District Court of Harrison. Tried below before the Honorable P. O. Beard.

Appeal from a conviction of manufacturing intoxicating liquor; penalty two years in the penitentiary.

The opinion states the case.

*Hall, Brown & Hall,* for the appellant. Upon question of insufficiency of evidence, Kaufman v. State, 165 S. W. Rep., 193; McCleary 165, S. W. Rep., 572, Fannin v. State, 100 id., 916; Maxwell, 78 id., 516.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, Judge.—Conviction is for the manufacture of intoxicating liquor. Punishment is fixed at two years in the penitentiary.

The specific charge is that appellant in October 1921, unlawfully manufactured intoxicating liquor, "to-wit, one quart of whisky." The exceptions were properly negatived, as was required prior to taking effect of the amendment of the Thirty-seventh Legislature.

The country about where appellant lived is timbered, and has many hills, hollows and ditches through it. On the occasion inquired about the officers found in a deep ditch or ravine some three-fourths of a mile north from appellant's house a still. It was in operation at the time. About 240 gallons of mash, some in a state of fermentation, was found. The fire was in a charcoal burner, and the boiler was of copper of about ten gallon capacity. The cooling feature was a coil running through a keg containing water, and whisky was dropping

out at the end of the coil into a jar or crock. There was about a pint of whisky in the jar. This was taken by the officers. The contents of the boiler was not quite as clear as that in the jar, and was described as "first run" whisky. Enough was taken from the boiler which, together with that in the jar, made a quart. When the officers discovered the still appellant was within two or three feet of it apparently examining the coil or boiler. His wife was upon the bank of the ravine. Both ran when they became aware of the presence of the officers, and appellant was shot in the leg.

No objections to the court's charge were presented, but a number of special charges were requested; one was given, the others refused, and, upon such refusal alleged error is predicated. Two special charges were to the effect that the indictment having alleged that the whisky was not being manufactured for medicinal, mechanical, scientific or sacramental purposes, the burden was on the State to prove it, and if it had failed to do so an acquittal was demanded. Three charges were properly refused. See Robert v. State, 90 Texas Crim. Rep. 133, 234 S. W. Rep. 133; Shaddix v. State, 90 Texas Crim. Rep. 431, 235 S. W. Rep. 602; Mayfield v. State, 244 S. W. Rep. 819; Mayo v. State, 92 Texas Crim. Rep., 624, 235 S. W. Rep., 241.

The court refused a special charge instructing the jury that it was no offense to possess either equipment or mash for manufacturing liquor, and though appellant may have been in possession of both he could not be convicted unless he had actually manufactured liquor. At appellant's request the court had already told the jury if he was preparing to make whisky, but had not actually begun the making of it when arrested, he should be acquitted. We see no necessity for both of the instructions. The one given involved the one refused, and to have given the latter would have been a repetition.

Bill No. 4 complains at the refusal to give a peremptory instruction to return a verdict of acquittal. This was properly refused.

Another requested charge was if the equipment found in appellant's possession was not capable of being used to manufacture whisky, the jury should acquit. This charge had no basis in the evidence, but would have been in the face of it.

Bills of exception Nos. 6 and 7 are to the refusal to give two special charges on circumstantial evidence. The request therefor is based upon the contention that appellant was charged with making "one quart" of whisky, when the direct proof shows he made only one pint. If appellant's contention is sound he might have gone even further and contended that the only direct evidence was as to the number of drops the officers actually saw fall from the coil into the receptacle placed to receive it. This would be carrying the doctrine of circumstantial evidence to a requirement beyond any practical use. It is only when inculpatory evidence is wholly circumstantial that an instruction as to that character of evidence is demanded. If

the facts proven are in such close juxtaposition to the main fact to be proved as to be equivalent to direct testimony, a charge on circumstantial evidence is not required. (For collation of authorities see Sec. 1874, pp. 1039 and 1040, Branch's Ann. P. C.)

After Johnson, one of the officers, had testified about the arrest and finding the still and whisky, he was asked by appellant's counsel regarding a statement he made to Joe Brown, one of appellant's attorneys, a few days later relative to the matter. He said: "I did not tell him (Brown) if I had gotten there a few minutes later I would have caught him running the whisky. I told Mr. Brown I didn't find any whisky. I did not tell him the truth. * * * I didn't tell him I got there too early." On redirect examination he testified: "If I did tell Mr. Brown I didn't find any whisky out there, I did it because the lawyers have a habit when you get a case to try and work the case up before you get in the court, and of course I am not going to 'shell the corn' out to them before it comes time to try a defendant. I am not working for the defendant after I go out and catch him. I consider it a better policy to tell a lawyer like I did Mr. Brown, than to tell him it was none of his business. Of course, we had a whole lot of fun about catching Horace Helton again, because we caught him before." We would observe here that the latter statement as well as all of the redirect examination went in without objection. Appellant called Mr. Brown as a witness, who stated that in a conversation two or three days after the arrest Johnson told witness that, "He didn't get any whisky from Horace Helton and that he got there too soon; if he had been a few minutes later he would have caught him but at the time he got there he wasn't making whisky." This evidence was admissible only to impeach Johnson. Appellant was not satisfied to follow the predicate, but after eliciting the answer last quoted, went further and asked Brown to tell how the conversation came up, and what was said. The State objected but it was overruled, and Brown gave his version of how the conversation started. On cross-examination the State asked Brown if when he began the conversation he didn't say, "I saw in the paper, or heard, they had caught old Horace again for "moonshining"" to which Brown replied "That conversation might have occurred." Objection to the question and answer was sustained on the ground that it was proving a former offense against appellant. No request was made to withdraw it from the jury. We think the court was in error in sustaining the objection. Appellant himself departed from the rule relative to impeaching testimony, and instituted the inquiry as to the beginning of the conversation. Having gone into the matter, it was pertinent for the State to develop all of the conversation on the same subject. (Art. 811 C. C. P., and cases cited thereunder in Vernon's Crim. Statutes, Vol. 2, and Branch's Ann. P. C., Sec. 91, pp. 58 and 59.) Even if this were not true, the

circumstance would not call for a reversal because practically the same evidence had gone into the record without objection in the redirect examination of Johnson.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

## May 16, 1923.

LATTIMORE, Judge.—Appellant says that we erred in upholding the refusal of his special charge No. 5 which is as follows:

"Gentlemen of the Jury: If you believe from the evidence introduced before you in this case, that the equipment found in the possession of the defendant on the day and date alleged in said bill of indictment, was not capable of being used for the manufacture of whisky or other intoxicating liquors and that no whisky or other intoxicating liquor had been manufactured by the use of said equipment, on the date and at the place alleged in said bill of indictment, or if you have a reasonable doubt thereof, you will acquit the defendant, and say by your verdict not guilty."

The record makes apparent the fact that appellant had in his possession equipment for the purpose of manufacturing liquor. We do not think ourselves without justification in saying that apparently he believed it sufficient for the purpose. When the raiding party arrived, the boiler full of first-run liquor was on the fire, a fire was burning under the furnace, a pipe was running through the water keg and into a glass jar or jug sitting by the side of the water keg in which was a quantity of whisky. As we understand it, appellant's contention that the above special charge should have been given is based on the proposition that Mr. Nesbitt, one of the raiding party, said if there was any top on the boiler he did not see it. Mr. Nesbitt was the last of the party to reach the point where he could see the still. Others had gone up before him. Officer Johnson testified that when he reached the still the whisky was dripping from the pipe into the glass container which had in it about a pint of liquor and that from the contents of the boiler, he filled said container. This witness testified that he took the top off the boiler. All the witnesses said the apparatus was carried back to Marshall. The sheriff of the county testified for the State that deputy sheriff Johnson brought with him on this occason back to Marshall, the top of the boiler and turned it over to him. While we observe that witness Nesbitt was careful to say that he did not see the top of the boiler when he reached a point where he could see the still, yet his testimony was apparently so cogent as to justify the conclusion that appellant was then, as well as theretofore engaged in the making of whisky. We do not

think the refusal of said charge materially erroneous under the provisions of Article 743 of our Code of Criminal Procedure.

An affirmative defensive theory can not be based on testimony which is admissible only for the purpose of impeaching a State witness. The defense sought to impeach witness Johnson and as part of its predicate therefor asked him relative to a conversation had by him with Honorable Joe Brown of defense counsel. Johnson admitted that he had misstated matters to Brown, saying that he preferred to do this rather than to tell him that the things he was inquiring about were none of his business. Mr. Johnson testified in response to this attempt to lay a predicate as follows: "Of course, we had a lot of fun about catching Horace Helton again, because we caught him before." There was no objection to this statement of the witness. Complaint is made of the fact that when Mr. Brown was on the stand testifying for the defense, for the purpose of impeaching Mr. Johnson, he was asked on cross examination in reference to this conversation, it being urged that this was proving by hearsay that appellant had been before arrested, and had a bad reputation. We think the matter correctly disposed of in our original opinion upon the proposition that the defense having gone into the conversation, the State was entitled to it all, on the same subject. We would further observe that it is a well known rule that where the testimony is admitted without objection, this deprives a later objection to similar testimony, of its soundness.

Regretting our inability to agree with the contention made by learned counsel for appellant, and believing the case correctly decided in the original opinion, the motion for rehearing will be overruled.

*Overruled.*