# Albert Raymond Arseneau v. The State.

No. 22448. Delivered March 31, 1943.
Rehearing Denied May 5, 1943.

The opinion states the case.

*E. G. Flowers,* of Fort Worth, for appellant.

*Marvin H. Brown,* Jr., Criminal District Attorney, and *M. Hendricks Brown,* First Assistant District Attorney, both of Fort Worth, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a twenty-five year sentence on a charge of murder.

James Dunham and appellant apparently had become associated while incarcerated in the penitentiary. Shortly prior to the homicide trouble had arisen between them, involving domestic affairs which apparently had been settled, and on May 14, 1942, they had spent much of the day together drinking and in idleness. Having used up their funds, appellant requested Dunham to drive him by his home so he could get some money but instructed him to park around the corner a distance from the house. In a short while appellant returned to the car with a .22 rifle which he testified he was going to pawn for money. Dunham was at the wheel. Appellant approached from the right. The physical facts seem to sufficiently corroborate the State's theory that he shot Dunham several times, breaking both arms

and penetrating the body at a number of other places while he was still in his car and under the wheel. Appellant then fled and was in hiding for a few days, when he voluntarily surrendered, but first called a bondsman and told him what he had done and attempted to make arrangements for bond. Dunham was taken to a hospital where he lived several days, during which time he made statements which were introduced by the State over appellant's objection. A statement was taken by an assistant district attorney which was reduced to writing, but was not signed because Dunham's arms were broken and he could not write his name. The appeal is directed chiefly to the introduction of this testimony, but we do not think that the bills of exception as qualified by the court present error.

Bills numbers one and two complain of the testimony of A. C. Howerton with reference to wounds and the direction from which the gun was fired. In qualifying the bill the trial court said that the witness "had given testimony qualifying him to testify concerning the course of bullets." He further states that similar evidence was given by the witness without objection and refers to the record which, upon examination, we conclude supports the court's qualification.

Bill number three complains of the evidence of the witness Tankersly, who quoted a statement made to him over the telephone by appellant while he was a fugitive. It was merely to the effect that he admitted the shooting and thought he had killed a man. The objection to the testimony was "as to how this boy shot him as being hearsay, and not proper testimony to establish that fact in the absence of a showing that it was a part of the res gestae." In the first place, the witness gave no statement as to how the shooting took place. Consequently the objection is not appropriate. Furthermore, the statement was made at a time and so offered as to make it admissible even though it had described the manner of the shooting.

Bills numbers four, five, six and seven related to the objections to the various statements made by the deceased while in the hospital and at a time when the State says that he contemplated death to a degree and within a time to make such statements admissible. The evidence is lengthy and it is sufficient to say that it amply justifies the ruling of the court in admitting same. Fambro v. State, 141 S. W. (2d) 354; Hill v. State, 161 S. W. (2d) 80, and authorities therein cited.

While we will not enter into a discussion of all of these bills, we do feel it appropriate to discuss that contained in bill of

exception number four. The attorney asked the witness, Mrs. Dunham, mother of deceased, what the deceased told her with reference to how he had been shot. Defendant objected to this because it was hearsay and the court sustained the objection. Other questions were asked and objections sustained to them. At a later date and apparently close to the time of his death, the witness testified that he did make the statement: "Well, he had accepted Christ on Sunday"; * * * "Well, he told me that he was all right with Christ. He said the Lord was standing by, and he was not suffering."

This was objected to after being given and the court sustained that objection. Other similar questions and answers were given, to which the court consistently sustained objections. We quote from the bill further as follows: " 'Mrs. Dunham, referring back; you did not answer that he had made a statement with reference to whether or not he expected to die, or with reference to seeing his God?' To which witness answered 'Yes,' and said attorney then and there asked witness 'Now, what was that particular statement? Only that statement.' To which said witness answered in the presence and hearing of the jury 'He said that the Lord was with him, and he was ready to go.' To which said answer the defendant then and there objected because same was not responsive, and because it was the same question theretofore asked her and the same answer, to which the court sustained an objection. Which said objection the court then and there in all things overruled, and permitted said answer to remain before the jury as evidence in this case."

In his qualification the court says that "in overruling the objections to the last question and answer complained of in the foregoing bill, there was no exception reserved."

From the very lengthy bill which we have considered with more than ordinary care, it appears that it was the purpose of the State to show the condition of the mind of deceased at the time he made statements relative to the shooting. Certainly it would be in keeping with proper procedure to do so and thus qualify the statements made for admission as dying declarations. The court sustained objection to much testimony which, as presented in the bill, would appear to be of value in establishing the fact that the deceased was contemplating his impending death at the time of making the statements. They accord with human experience and, instead of the rulings being reversible error, they appear to be extremely cautious and favorable to the party on trial.

Bill of exception number five relates to the conversation between the deceased and the doctor, in which the deceased asked how much longer it would be. This apparently refers to his death. The doctor replied that it would be only two or three hours when it would be all over. This evidence was detailed by parties present who heard it and if there is any doubt about its admissibility that doubt would be removed by the court's qualification, which says the objection was made after the answer was given; that the same question was at another time repeated and the answer given without any objection from the counsel for the defendant. The objection complains of this being hearsay statement; that it could only come from the doctor whose absence was not accounted for. We are impressed that any party present would be as well qualified to relate the occurrence as the doctor himself, but the qualification shows that the doctor was in the armed services at the time of the trial and not available as a witness.

Bill of exception number seven relates to the statements made by the deceased regarding the shooting and a discussion of it is disposed of by the foregoing discussion relative to other related bills. The qualification further shows that other testimony, not embraced in the statement of facts or the bills, was heard by the court in the absence of the jury showing that "he was conscious of approaching death, and had no hope of recovery." This we think disposed of the principal question on the appeal.

Bill of exception number nine relates to the cross examination of appellant as a witness in his own behalf, and the court's ruling was supported by a well established rule of law.

Bill of exception number ten embraces the written reproduction of the statement of deceased and the questions relative thereto have been sufficiently discussed.

We find no error reflected by the record and the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again complains because of the admission of certain testimony of the mother of the deceased in which it was shown that the deceased had made the statement, in effect, that he had made his peace with his God. We have again carefully

gone over such bill No. 4, and find that each time an objection was urged thereto such was sustained by the careful trial court until the last answer, which was allowed to remain with the jury, and, according to the court's qualification, no exception to such ruling was reserved. We, therefore, see no error therein reflected.

In bill No. 5 it is complained that the deceased's conversation with the physician attending him was not an evidence of the fact that deceased recognized his impending death. Such conversation consisted of the question to the doctor: "Doctor, how much longer will it be?" to which the reply was made: "He told him it would be two or three hours and it would be all over." Taking this language in conjunction with that shown by others relative to the condition of the deceased's mind, and giving it a usual and fair construction it leads one to the conclusion that an impending death was in contemplation of both the doctor and the deceased, who did expire within a short period of time thereafter. It is also shown by this bill that soon after the matters occurred that are shown in the above bill, the witness repeated such conversation, and there was no objection made thereto. We see no error reflected therein.

It seems to be recognized by appellant that on the occasion of each statement made by the deceased, that the consciousness of death appeared, but in such instance it was no more than that death was the portion of all humanity, and that such statements lacked the element of impending or approaching death; that when same were made the deceased was not then in "articulo mortis" or the moment of death, but merely expected to die, probably at some future date. The statement of the wife of deceased being: "Jimmie told me he was going to die. He said he would not recover, and said he wasn't going to live." We think it is a fair inference to be drawn from the above statement that a person suffering from seven bullet wounds in his body, both arms broken, and abdominal perforations, and peritonitis therefrom, surely meant that he was expecting to die from such wounds, and did not mean that at some future date he expected to pay life's last debt.

We also think the dying statement made to the assistant district attorney was attended by the legal requisites to render same admissible; nor do we think because the same was not signed by the deceased to be of any moment. It was shown that both of his arms were broken, and he was unable to sign his name, the same being witnessed by three persons, this state-

ment being made on the day of his death at 3:45 in the afternoon.

We think this case has been properly disposed of in the original opinion.

The motion will therefore be overruled.