AGNES WATSON V. STATE

No. 26,986. June 2, 1954
State's Motion for Rehearing Granted Oct. 27, 1954
Appellant's Motion for Rehearing Denied December 1, 1954
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) January 12, 1955

6

[REDACTED]

*Harkness & Friedman,* by *Harry B. Friedman,* Texarkana, for appellant.

*Bun L. Hutchinson,* District Attorney, *Robert L. Dalby,* County Attorney, both of Texarkana, and *Wesley Dice,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, life imprisonment.

We are confronted at the outset with a motion to strike the Court's Bill of Exception No. 1, which motion is supported by affidavits. From these we learn that on February 16 appellant presented 50 formal bills of exception to the trial court and that on March 8 the court signed and approved 10 bills, refused 17 bills, and approved and qualified 23 bills. Appellant excepted to the refusal and qualification and secured the signature of the court following his exception. The trial court returned the bills to counsel, as is required by Rule 372(i), Rules of Civil Procedure, *but did not prepare his own bills as required by the same section.* On March 16, the last day for filing bills of exception in this cause, the appellant's attorney filed all 50 bills, which had been delivered to him on March 8, with the district clerk and waited at her office until it closed to ascertain if the trial court intended to file any bills of his own. Some several days later appellant learned that the court had, at 8:45 P.M. on March 16, without any notice to him, filed one bill in which he referred to appellant's bills by number and attempted to

adopt them as the court's bills and thereby destroy the effect of the appellant's exception to the court's qualification.

Appellant asks that we reverse this conviction because he has been deprived of his bystanders' bills by the action of the court as aforesaid. This we will not do, but will consider appellant's original bills as if they had not been qualified. Palmer v. State, 154 Texas Cr. Rep. 251, 226 S.W. 2d 634.

Appellant, a 66-year-old widow, killed her 70-year-old bachelor brother, with whom she was living, by hitting him in the head with a stick of stove wood. The only serious question in the case was the sanity of the accused.

At the beginning of the trial the appellant asked that Professor Tedford, a practicing psychologist she intended to use as an expert witness, be excused from the rule. This request the court refused to grant.

The appellant's testimony consumes 123 pages of the record. She gave the history of her strange life and told of her emotional reactions prior to and at the time of the homicide.

Near the close of her evidence the appellant called Ralph T. Tedford as a witness. He stated that he had five years' training at Harvard and two years at the University of Texas in psychology and that he had taught psychology for some years prior to going into penal institutional work, where he had spent ten years in psychological counseling in various state and Federal correctional institutions. He stated that he had first seen the accused some time after the homicide. In order to get the witness' opinion as to the appellant's sanity at the time of the killing, the appellant was relegated to propounding a hypothetical question which attempted to condense her testimony. The witness was in a measure discredited in the eyes of the jury because at one time he admitted that he was basing his opinion that the appellant did not know the difference between right and wrong on the day in question, in part, upon what appellant's counsel had told him about the case and not entirely upon the facts set forth in the hypothetical question.

Clearly, we think he should have been permitted to sit in the courtroom, hear the appellant and other witnesses testify, and give his opinion based upon the whole testimony as to her sanity at the time of the commission of the offense.

It has been the rule in English speaking jurisprudence since McNaghten's case, 10 Clark & F. 200, that a medical man who has been present and heard the evidence may be asked whether the facts stated by the witnesses, supposing them to be true, show a state of mind incapable of distinguishing between right and wrong.

In Johnson v. State, 10 Ct. of App. 571, we find the following:

"When medical experts are called solely as such, the better and most satisfactory practice would be to allow them to remain in the room and hear the testimony of all the other witnesses, in order that from the whole testimony they may be able to determine from the evidence itself the matter upon which their opinion is desired."

This is the rule followed in a majority of the jurisdictions. See 39 L.R.A. 310 (n).

We think it logically follows that a ruling of the court which deprived the appellant of this admissible evidence should be held to be reversible error. This court has with uniformity refused to disturb a jury verdict on the question of sanity, but it is our duty to reverse a conviction where the jury, as here, has been deprived, by an erroneous ruling of the court, of admissible evidence on the question of sanity.

We are not unmindful of the fact that Tedford was not a psychiatrist. He did have, however, considerable training and experience in analyzing motivation for human conduct. A psychiatrist is certainly best qualified to pass upon a question of mental illness. However, we have consistently accepted the testimony of medical doctors as experts. We think that also of those qualified to give an opinion, superior to that of a layman, would be a practicing psychologist, and that Tedford should be classified as an expert. See concurring opinion of five Justices of the Supreme Court of Michigan in People v. Hawthorne, 291 N.W. 205.

It must be remembered that the trial court found Tedford qualified as an expert when he permitted him to answer a hypothetical question. His error was in not giving application to the rule in McNaghten's case, supra.

Formal Bill of Exception No. 23 and Informal Bill No. 19

relate to proof by the state of the good reputation of the deceased. Appellant did not attack the reputation of the deceased. In Moore v. State, 46 Texas Cr. Rep. 54, 79 S.W. 565, and Keith v. State, 50 Texas Cr. Rep. 63, 94 S.W. 1044, we reversed the conviction because the state proved the good reputation of the deceased for being a law-abiding citizen when that reputation had not been attacked by the accused.

Formal Bill of Exception No. 41 and Informal Bill No. 13 relate to the court's refusal to admit in evidence a certificate of Dr. Rowell, Superintendent of the Terrell State Hospital, certifying that the records of such institution revealed that J. A. Drey (Dray) (the appellant's father) was admitted to such institution in 1890, diagnosed *manie,* acute, and that he died in such institution in 1915. If upon another trial the relationship between appellant and this patient is shown, the public record or certified copy thereof of the hospital should be admitted. Article 3731a, V.A.C.S.

For the errors pointed out, the judgment of the trial court is reversed and the cause remanded.

ON STATE'S MOTION FOR REHEARING

WOODLEY, Judge.

On original submission we reversed the conviction because (1) the trial court declined to excuse the witness Tedford from the rule in order that he might hear the whole testimony and testify as an expert witness on the question of the sanity or insanity of the defendant; (2) the state was permitted to prove the good reputation of the deceased when that reputation had not been attacked and (3) the court's refusal to admit in evidence a certificate of the superintendent of a state hospital as to the record concerning J. A. Drey (or Dray) (appellant's father) who died in such institution in 1915.

All of these holdings are attacked in the state's motion for rehearing.

As to the first holding, we are referred to the case of Leache v. State, 22 Texas App. 279, 3 S.W. 539, decided after the Johnson case cited in our original opinion.

In the Leache case several medical experts summoned by the defendant, whose testimony the defendant proposed to use

on the issue of insanity, were excluded from the courtroom and placed under the rule with the other witnesses, over the protest of the defendant. The rule stated in Johnson v. State was recognized, but the court said that the enforcement of the rule was in the discretion of the trial court, and declined to reverse because an abuse of discretion was not shown.

The holding in Leache v. State, 22 Texas App. 279, 3 S.W. 539, is authority for the state's position and we have reached the conclusion that it should be followed. It is not shown or contended in the bill that the trial court abused his discretion in not excusing Tedford, the psychologist and expert witness, from the rule.

It is significant that appellant's defense was temporary insanity, and the mental condition of appellant at the time of the trial or prior to the killing was not in issue nor was it the subject of the expert's testimony. He testified that in his opinion, from the facts stated to him in a hypothetical question by appellant's counsel as the pertinent facts on the issue, appellant did not know right from wrong at the time of the killing. It is not apparent that anything could have been added had the witness remained in the courtroom and heard the evidence covered by the hypothetical question.

As to proof by the state of the good reputation of the deceased, the record supports the state's contention that testimony to the same effect from other witnesses was admitted without objection and therefore was not reversible error. Helton v. State, 94 Texas Cr. Rep. 359, 250 S.W. 1030; Smart v. State, 133 Texas Cr. Rep. 155, 109 SW. 2d 179; Mershon v. State, 142 Texas Cr. Rep. 575, 155 S.W. 2d 372; Arseneau v. State, 145 Texas Cr. Rep. 587, 171 S.W. 2d 132; Garland v. State, 157 Texas Cr. Rep. 4, 246 S.W. 2d 204.

It is not likely that we would have ordered reversal on the third ground alone, but our attention is directed to the fact that Bill of Exception No. 41 and the corresponding informal bill do not set out the proffered instrument or show that a record or copy therof was offered in evidence. Also, the matters set forth in the ex parte affidavit were admitted in evidence from other sources. Under these facts appellant is not entitled to a reversal.

Believing that the evidence sustains the conviction and that no reversible error appears, the state's motion for rehearing

is granted, the order of reversal is set aside and the judgment is now affirmed.

MORRISON, Judge (Dissenting).

I cannot bring myself to agree with the opinion of my brethren herein. This case, as I see it, presents a clear case of abuse of judicial discretion. Professor Tedford had examined the accused and was not permitted to give the jury the benefit of his opinion based upon such examination. I quote from the ruling of the trial court:

"On the basis of the witness' statement that his answer was based partly on his examination of the defendant and partly on the hypothetical question, the answer of the witness, Gentlemen, is withdrawn from your consideration and you will not consider it for any purpose whatsoever."

In this the court was clearly in error.

In Gephart v. State, 157 Texas Cr. Rep. 414, 249 S.W. 2d 612, we held that the state might send expert witnesses into the jail to examine the accused and then testify as to his sanity. Here the court refused to permit the witness to base his answer on his examination of the accused but limited him to the hpothetical question propounded by her attorney and then when the state took him on cross-examination the witness was asked if it was not ridiculous to say that he could base an opinion upon a hypothetical question. Had the witness been sitting in the courtroom during the course of the trial, as he had a right to do, then the jury would, in all probability, have given some credence to his opinion. Because of the ruling of the trial court, the witness was limited to the hypothetical question when he should have been permitted to give his opinion based upon his examination of the accused prior to trial and upon the testimony introduced at the trial.

The fallacy of the reasoning in the Leache case, cited by the majority herein, and the fallacy in their present holding in this case is that the jury would necessarily consider less seriously the opinion of an expert which was based upon a hypothetical question. My brethren say that no abuse of discretion is shown. To me an abuse is apparent.

It is only natural for juries to question the testimony of an expert who is testifying that the accused is insane. This is

especially true where the expert is required to base his answer on a question which from its very nature cannot include all the evidence which the jury has heard.

I have read this record carefully, and to me it clearly says that this destitute old woman is a person of unsound mind. We would not be justified in substituting our view of the evidence for that taken by the jury. But where the trial court refuses to permit the jury to hear admissible evidence, then it becomes our duty to reverse the conviction.

The fact that the trial court went to the clerk's office, at night and without any notice to the appellant's counsel, as pointed out in the original opinion, and attempted to file bills of exception of his own indicates to me that he became an advocate rather than an impartial arbiter in this cause.

I respectfully enter my dissent to the affirmance of this conviction.

ON APPELLANT'S MOTION FOR REHEARING

GRAVES, Presiding Judge.

In her motion the appellant complains generally of the majority opinion herein and reiterates many of the objections that were offered on the trial of this case.

The main question seems to hinge upon the point that the court refused to allow the expert psychologist to testify in reply to a hypothetical question propounded to him by the appellant's attorney and also refused to allow this witness to remain in the courtroom during the trial of the case, the rule having been invoked.

It is noted that a hypothetical question was propounded to this psychologist which consisted of many pages in the statement of facts, and so far as we are able to ascertain, it covered all the defensive testimony that was offered in this case, except that of the character witnesses.

At the end of this long and complicated question, it is evident from the psychologist that a portion of the question which was submitted to him had come from the defendant's attorney who was propounding the question. The court overruled the first objection by the state and the witness was allowed to testify in

substance that at the time the appellant took the life of the deceased she did not have the capacity for knowing the difference between right and wrong at that time. However, upon cross-examination the state elicited from the witness that some of this question propounded to him was not present herein nor offered as defensive matter in this case and that some of his opinion was based upon a part of what the appellant's attorney had told the expert witness. Whereupon the court inquired of such witness and he admitted that part of his testimony was based upon some things that had been told to him by the appellant's attorney. Thereupon the court ruled as follows:

"THE COURT: On the basis of the witness' statement that his answer was based partly on his examination of the defendant and partly on the hypothetical question, the answer of the witness, Gentlemen, is withdrawn from your consideration and you will not consider it for any purpose."

Again, the witness was asked to erase from his mind, if he could, the facts that had been communicated to him and then what would his answer be after the elimination of such facts and based solely on facts stated in the second hypothetical question. Whereupon the witness was allowed to state that his answer would still have been the same. Thereupon the witness was allowed to testify that this appellant did not know the difference between right and wrong at the time of the commission of the offense, and that statement was permitted to remain with the jury, although the answer to the first hypothetical question (which contained matters outside the record) was not allowed to stand. The ruling of the court at the end of this controversy is as follows:

"Gentlemen, I withdrew from the jury one answer to one question, and that one question and one answer is withdrawn. The rest of the record stands."

We can see no error in the ruling of the court. Eventually, as to this hypothetical question, we can readily see the reason why, because many things might be told to the expert witness relative to the appellant's previous conduct which was not in evidence on the trial of the case, and, under the circumstances, one's attorney could give a series of incidents that may or may not be in evidence, and one should be confined strictly to the record as introduced in the presence of the jury.

Complaint is also made because the court first placed this expert psychologist under the rule and refused to allow him to re-

main within the courtroom during the introduction of the testimony. We confess our inability to see where the court abused his discretion in refusing to allow the witness Tedford to remain within the courtroom during the trial of the case. From the hypothetical question propounded to this witness, it is evident that the appellant's attorney produced before him all the testimony available in the trial hereof relative to the appellant's mental capacity at the time of the killing, influenced as it might have been by her life and her long period of time as she wandered in foreign states and engaged herself in many activities therein.

Appellant further vigorously complains because she was not allowed to prove the fact that the appellant's father was a maniac and confined for many years in the state hospital for the insane and eventually died there. It is worthy of note, that this matter was otherwise proven by direct testimony that the father was insane and died in the insane hospital. Under the circumstances we can see no injury that occurred because of the fact that the certificate of the head of said hospital was not allowed to be produced. The facts themselves were presented from the stand by a witness.

We think that the wisdom of the trial court was evident when he withdrew from the consideration of the jury the first hypothetical question and its answer by the appellant's witness because it was admitted that some of this testimony came from conversations with the appellant's attorney at a prior time and was not based upon testimony that appeared on this trial.

It was shown as a motive for the killing that the appellant was the only heir at law of the deceased and is now in possession of monies that were buried upon the premises, as well as some 300 acres of land that belonged to the deceased.

In the motion for new trial appellant claims that there was certain misconduct upon the part of the jury in that they utilized in their deliberations matters other than those offered in the case. The affidavits of all the jurors are present in the record. There are 28 affidavits in number, some of the jurors making two affidavits, relative to their conduct during their deliberations therein. We will not review all of them, but take the affidavit of Mr. Anthony, the foreman of the jury, and the gist of practically all of such statements is that immediately upon their retirement to their room they voted unanimously as to the appellant's guilt; and that they then voted on the question

of her insanity, all being unanimous that she was sane. The punishment of the appellant for life was first voted on by nine jurors, and three being for a term of years less than that, but all of them were agreed that this woman should be put away for the rest of her life, and they finally all agreed upon a life sentence. However, there was some desultory discussion relative to whether or not she would be eligible for a pardon and parole after a portion of the sentence had been served. The affidavits all seem to be unanimous that nobody knew whether she would be eligible or not, and that the matter was not further deliberated upon. In view of the affidavits, we do not see therefrom that there was any misconduct upon the part of the members of the jury.

Appellant complains of the misconduct of one of the jurors, namely, C. L. Davenport, who was selected as the first member of the jury. It was ordered by the court at that time that he should be taken to the jury-room and left there, but as he started out of the courtroom he approached his father, who was seated about the middle section of the room near the center aisle, and started to request him to let him have some money to pay for his meals while on the jury. The deputy sheriff noticed the fact that the juror was not following him and he turned back and grasped him by the hand and led him out of the room to the jury-room. Afterwards, however, at the juror's request, he approached the father, who was still seated in the courtroom, and obtained from him three dollars for the purpose of paying for the juror's food while serving on the jury and took such money to the juror. This all occurred in the sight of everyone in the courtroom, as well as the district judge and the deputy sheriff. Under these circumstances, we do not think that this was misconduct of any kind upon the part of the juror.

While this case has had its difficulties in this court, as well as in the trial court, we think we have arrived at the proper solution thereof as shown by the opinion of Judge Woodley herein.

The motion for rehearing is therefore overruled.

MORRISON, Judge (Dissenting).

I did not fully give vent to my disapproval of the majority opinion in my original dissent in the hope that my brethren would reconsider their decision. I am tempted to do so now, but temperance restrains me. I do, however, remain convinced that

this unfortunate accused did not receive a fair trial and again raise my voice in protest. Realizing however that anything further that might be said would be futile and would lead only to discord where harmony should prevail, I will say no more.