**RAMIREZ v. SANCHEZ et al.**

No. 9821.

Court of Civil Appeals of Texas. San
Antonio.

Nov. 4, 1936.

Pope & Pope, of Laredo, for appellant.

N. A. Rector, W. W. Winslow, D. M. Valdez, and E. A. Mullally, all of Laredo, for appellees.

BOBBITT, Justice.

Silvestre Ramirez, a pioneer resident of Zapata county, Tex., died at his home in such county, on June 23, 1934, intestate, leaving as his only heirs at law his two grandchildren, Leon Ramirez and Felicidad Perez, appellants in this appeal. Silvestre's wife had predeceased him. They had only one child, a daughter, and the mother of the two above-mentioned grandchildren, and she had passed away in 1926.

For several years prior to his death, Silvestre was involved in vexatious and expensive litigation concerning his cattle and ranching interests in Zapata county. It appears that his said grandchildren, Leon and Felicidad Ramirez, and their father, Ildefonso Ramirez, filed several suits against him for partition of lands and other properties, and that on one occasion caused his properties to be placed in receivership. In any event, and without regard to the reasons therefor, or the merit of the suits, the record shows that on account of such litigation the old gentleman was caused much expense and great annoyance. He resented the action taken against him by his grandchildren and their father, and the feeling between him and them was very unfriendly.

Until the time of his death, Silvestre continued the operation of his ranch and cattle business, and lived at his old homestead in Zapata county, surrounded and served by his old employees and servants. Due to much litigation and other unfavorable circumstances he had incurred many debts, which he could not pay. His said grandchildren procured and held judgments against him. He was confronted with demands for court costs and attorney's fees, which he could not meet. He was behind with his taxes. He was without funds to carry on his cattle and ranching business or with which to purchase the necessities of life. He was about eighty years of age. In this unfortunate situation he approached his old-time friend, J. M. Sanchez, a responsible and lifelong citizen of Zapata county, and asked for his assistance in these various troubles. The record shows that he was, from time to time, given assistance by Sanchez in his pressing personal demands. It is further shown that Silvestre asked Sanchez to accept a conveyance to his lands in Zapata county, aggregating approximately 2,800 acres, on the condition that Sanchez would relieve him of some of his various troubles, pay off his several debts, and permit him, Silvestre, to retain possession of the land and all income therefrom (except one-half of the mineral rights), as long as he lived. It is shown that on May 2, 1933, Silvestre did, by deed of that date, convey his said lands to J. M. Sanchez in consideration of Sanchez obligating himself to pay off and discharge the several debts, liens, and judgments then pending against him, and conditioned that the grantor retained a full and complete life estate in and to all the property, except one-half interest in the minerals, which vested in Sanchez immediately, and except three small tracts of land reserved by Silvestre, to be conveyed in fee simple to three other parties—faithful old servants and employees—who had lived with and served him on and around his ranch for many years.

It is undisputed that the deed was executed and delivered in accordance with such proposal and agreement; that Sanchez paid off and discharged the obligations owing by the grantor as set forth in the conveyance, including a $1,750 judgment held against Silvestre by his grandchildren, appellants in this appeal; that those small tracts of land reserved for the old servants were later duly deeded to them—all in keeping with the plans and proposals of Silvestre as originally made to Sanchez at the time he agreed to accept the conveyance, pay the said obligations therein stated, and otherwise comply with the conditions of the deed.

It is shown that the conveyances and instruments necessary and proper to carry into effect the said proposal were drawn by the attorney for the grantor, N. A. Rector, and in complete accordance with Silvestre's wishes and instructions, and all such were duly recorded in the deed records of Zapata county, where the land is situated.

It is shown, furthermore, that the appellants here were advised of the conveyances as thus made by their grandfather, and that, when Sanchez later paid to the appellants the amounts of the judgments they had against their grandfather, in compliance with the provisions of the deeds, they each executed a release therefor to Sanchez, wherein they each recited that their grandfather had theretofore deeded the land here in question to Sanchez; and at that ·time appellants raised none of the questions as to the mental or physical condition of their grandfather or the exercise of undue influence over him by Sanchez and others, which are now asserted in this case.

After the death of Silvestre, one of the grandchildren, Leon Ramirez, became the administrator of the estate, and as such administrator instituted this suit in the form of trespass to try title in the district court of Zapata county, and to set aside the said deeds from Silvestre to Sanchez and·the other three parties, on the allegation and contention that "said deeds were procured by undue influence exercised over the said Silvestre Ramirez, while he was of ·an advanced age and in an enfeebled mental condition, and that the said Silvestre Ramirez at the time of the execution thereof was not of sound and disposing mind, and was under the complete domination, power, and influence of J. M. Sanchez, the other appellees, and others who assisted them."

The cause proceeded to trial upon appellants' first amended petition containing the same allegations, and purported "offer of restitution" to Sanchez of the amounts claimed as actually paid by him to appellants; first, in the form of a claim and lien therefor against the estate of the deceased, and second, and later, through a supplemental petition, appellants tendered into court a cashier's check for $1,700 only, in ·full satisfaction, as they said, of Sanchez's claim. Sanchez refused such purported tender, and with permission of the court such ⁄ check was by appellants withdrawn from the court.

Appellees denied the allegations of appellants in toto, and alleged the facts and circumstances leading up to, and in connection with, the conveyance of the land, conditioned as aforesaid, by Silvestre to Sanchez and the other parties, and the compliance by Sanchez with all such conditions. Appellees also filed a cross-action, in the nature of trespass to try title to recover the premises, against appellants, and to quiet title to the lands here involved.

Silvestre Ramirez was the owner of the property here involved, prior to and at the time of the conveyances to appellees, as here complained of by appellants, and he, of course, had the right and power, if possessed·of the legal mental capacity, to dispose of such property as he deemed for his best interest and in accordance with his own judgment and desire. The written instruments executed by Silvestre during his lifetime, and through which appellees' claim title to the lands in question, were duly executed, delivered, and recorded, and the legal title to all such lands passed thereunder to appellees, unless, as appellants here now contend, that at the time of the execution of such instruments Silvestre Ramirez was (1) without the requisite mental capacity to make a valid conveyance of his property, or was (2) at such time the victim of undue influence exercised over him by Sanchez and other, persons to such an extent that his acts and deeds were not the result of his own free will, choice, and desire, but the result of the improper and undue influence of such other persons exercised over the mind and· will of said Silvestre Ramirez. In short, appellants allege that Silvestre was either without the mental capacity to sell and convey his property at the time of the execution of the deeds in question, or, if he in fact did possess such capacity, then he was unduly influenced, overreached, and caused by Sanchez and other persons to part with his property contrary to his own wishes and in violation of the rights of his heirs at law. .

It is clear from the record before us, and conceded· by appellants, that the proper answer to these questions must control this appeal. These are fact issues, and are the subject of much pleading and an unusually large record, which we have carefully reviewed. The assignments and briefs of the parties present many questions of procedure and other matters which are not necessary for a proper disposition · of the appeal, and ,much of the testimony relates to matters and issues not here involved.

The cause was tried to a jury at a special term of the district court of Zapata county, convened at Zapata, on the 8th day of April, 1935, pursuant to order duly issued and entered by the Honorable J. F. Mullally at the regular February

term of said court, and provided for the trial of this particular case and a companion case, at such special term, which order, among other things, provided: "Both of which causes are now pending on the Docket of the District Court of said County; and which causes have been set for trial on said April 8th, 1935, by agreement of the parties and their attorneys of record."

When the court convened, pursuant to the above-stated order, appellants objected to the trial on the contention that the court was without jurisdiction to hear the cause, and for the asserted reason that it was not a regular or special term of the court; that it was not a special term because the order calling same was invalid in that it failed to specify the "length of time of such special term"; that is, the court was without authority to hear any case at such so-called special term over the objection of any party who had "not agreed in writing" to try such case in vacation; that the court was sitting not in a regular term of said court; that the order calling the special term was invalid in that the length of the term was not specified in the order calling it. The court overruled appellants' contention and called the case for trial. We sustain the action of the trial court, and overrule appellants' contention here made that the trial court acted without authority in proceeding with the trial as provided in the above-mentioned order calling the special term beginning April 8, 1935.

The trial court was clearly within the provisions of the law in calling such special term, and proceeding with the trial, even though the length of the term was not specified in such order. The authority of a regular district judge to call and hold special terms of the district court is found in article 1920, R.S.1925. The order of Judge Mullally calling the special term here complained of by appellants is in compliance with the statute. No attack is made upon the order, or of the integrity of the special term provided thereby, except that the "length of such term" is not set forth in the order. However, in so far as appellants are concerned, their case was set for trial on a day certain at the beginning of such special term in the terms of the order itself, and which order also states, furthermore, that this cause was set at such special term "by agreement of the parties and their attorneys of record." Without regard to appellants'

present position or contention that the court was without authority to try such case, "because no written agreement has been made by this plaintiff (appellants) with the defendants (appellees) in this case agreeing to a trial of this cause at this time," the agreement made to try this case on April 8th "by the parties and their attorneys of record" and then incorporated in the order of the court calling the special term, is "an agreement in writing" to try the case at the time stated. And without reference to such particular circumstances, it is our opinion that an order of the regular district judge, duly made at a regular term of the court, calling a special term of such court to convene at a day certain to try cases then pending on his docket, is valid, even though he omits to state in such order the time such special term shall consume or when it shall end.

In the case of Jowell v. Coffee, 62 Tex. Civ.App. 487, 132 S.W. 886, cited by appellants in support of their contention, the court there referred to article 1114 of the Revised Statutes of 1895, which provided that the "order shall state the length of time deemed necessary for the holding of such special term" when, in the discretion of the judge, such special term becomes necessary.

In the revision of 1911, that article was amended, and it was then held, in the light of the amended article, by the Court of Criminal Appeals, that the holding in the case of Jowell v. Coffee, was no longer applicable to the statute providing for the calling of special terms of the district courts. Mayhew v. State, 69 Tex.Cr.R. 187, 155 S.W. 191, on page 197.

In the revision of 1925, the article was further changed, but there is no reference to the specification of the length of the special term when the order is made by the judge. The Mayhew Case states the correct rule.

Appellants complain of the action of the trial court in overruling their application to change the venue of such case from the county of Zapata, and urge many assignments of alleged error on the part of the trial court in refusing their said application. It is our opinion, from a careful review of the record before us, that the action of the trial court is not subject to attack in this respect, for the reason that the issues thus raised were contested by appellees, both by the pleadings and through the testimony of numer-

ous witnesses. The facts alleged and the evidence offered in support of such application were addressed to the sound judgment and discretion of the trial court, and, in the absence of a showing of an abuse of such discretion, his judgment should not be disturbed. None such is shown in this case, and appellants' assignments in this regard are overruled. Article 2171, R.S.1925; Gannaway v. Ins. Co. (Tex.Civ. App.) 85 S.W.(2d) 345.

We should here state, furthermore, that, even if we might be in error in this conclusion, nevertheless, appellants' motion for change of venue on account of the alleged disqualifications of the jurors in Zapata county in this particular case, must be overruled for the reason that, under all the evidence offered by appellants in support of their allegations in this cause, the court would have been justified in instructing the jury in favor of appellees. In other words, a careful review of the many pages of testimony offered by appellants in support of their charges of lack of mental capacity on the part of Silvestre Ramirez and the exercise of undue influence over him by the appellees clearly shows that neither of such charges was sustained by any competent evidence; that reasonable minds on any jury, anywhere, under the evidence, could come to only one conclusion, and that is, that appellants' said allegations were not sustained. For this reason the action of the trial court, in overruling appellants' application for change of venue, even if erroneous, is harmless. There is no allegation or suggestion that a change of venue to any other county would in any way change or enlarge the evidence offered in support of appellants' allegations. It is presumed that they offered all the evidence available in support of their charges, and as above stated such evidence would not support a verdict in their favor by a jury in any county in Texas.

Appellants complain of the action of the trial court in overruling their motion to disqualify W. W. Winslow and D. M. Valdez, as attorneys for appellees in this cause, on the contention that such attorneys, some time prior to the trial, were offered and considered employment by appellants in some of their claims involving the same property and parties here concerned; that said two attorneys gained confidential information from some of appellants, and then accepted employment from appellees. These charges were strongly denied by both Winslow and Valdez, and the trial court considered all pleadings addressed to such charges, and the testimony offered, pro and con, on such motion, overruled all such charges of appellant and declined to disqualify either of said attorneys.

The position or status of an attorney, after he has been approached by one party in respect to certain litigation and has refused for any reason to accept employment, and then later is engaged by the opposite party in the same matter, is, generally speaking, a problem which he must solve within his own conscience, by his own judgment, and by his own sense of propriety and professional ethics. The trial court heard all the testimony on this unusual, and ancillary proceeding, and found that the charges by appellant were not sustained, and his action on such motion should not be disturbed by this court.

As their first witness, appellants called to the stand one of the opposite parties, against whom it seems most of the charges are brought in this suit, J. M. Sanchez. Counsel for appellants questioned Sanchez, at length, concerning the transactions between Silvestre Ramirez and himself which resulted in the execution and delivery of the deeds in question from Silvestre to Sanchez, and the other appellees. He was asked as to the procurement of the deed to himself; the payment of the debts and obligations of Silvestre, as stipulated in such deed; the different amounts; the manner of payment; to whom paid; under what conditions the various debts were paid by him for the account of the deceased.

At the conclusion of such interrogation by counsel for appellants, the attorneys for appellees examined said Sanchez at length, and went into more detail, as to the various matters brought out by appellants' counsel, relating to the transactions between Sanchez and the deceased. To this line of examination appellants then objected, and sought to prevent further testimony by Sanchez as to his transactions with the deceased Silvestre, under the protection afforded by the provisions of the commonly termed "dead man's statute," article 3716, R.S.1925. The court permitted Sanchez to enlarge upon, extend, and relate more in detail, his transactions with Silvestre Ramirez, under interrogations by his own attorneys, and over the objection

of appellants' attorneys, on the theory that Sanchez "having been called to testify to such transactions by the opposite party," the bar of the statute had been removed, and appellants had waived their right and the protection generally effective under the statute, by themselves calling upon Sanchez to relate the transactions he had with the deceased.

The proper application of the provisions of this statute in particular cases, and to the introduction of testimony on the part of persons who dealt with a person since deceased, is sometimes difficult; but in a case, as here, where a party himself calls to the witness stand an opposite party, and asks him to relate the facts, circumstances, and transactions had by him with the deceased, he cannot then claim the protection of such statute in order to prevent other and more detailed testimony by such opposite party, concerning his transactions with such deceased, and which he himself raised and which he could have averted by complying with the terms of the statute, by refusing to call such party, and of objecting to his testimony if tendered by his adversary. Under the record here presented, we hold that the trial court properly admitted all the testimony offered by Sanchez in this cause, and we overrule all of appellants' assignments of alleged error on the part of the trial court in that regard. Article 3716, R.S.1925; 14 Tex.Jur. p. 319 et seq., and cases cited; Reynolds v. Porter (Tex.Civ.App.) 54 S.W.(2d) 1086; Plunkett v. Simmons (Tex.Civ.App.) 63 S.W.(2d) 313; Walkup v. Stone (Tex.Civ.App.) 73 S.W.(2d) 912.

■ The remaining assignments and propositions presented in this appeal by appellants are controlled by the conclusion we have reached in reference to the main issues involved in the case as submitted. Appellants do not undertake, on this appeal, to substantiate their claim of "restitution" or rescission based upon their purported tender as made in the trial court. The deeds under attack are in due and legal form, regular on their face, based upon valid and legal consideration, were duly delivered to appellees and recorded in the deed records of Zapata county. They are, therefore, presumed to be valid and regular in every respect.

Under the record here presented, the burden is squarely upon appellants to show, both by appropriate pleadings and sufficient evidence, that the deeds in question are void.

We find that the pleadings of appellants are sufficient to raise the issue on the charges that Silvestre lacked mental capacity to execute a valid contract at the time the deed or deeds were executed and delivered, or that he was at the time unduly influenced, overreached, and defrauded by appellees. If either of such charges are sustained by competent and sufficient evidence, appellants are entitled to a judgment against appellees, unless for some other and separate reason they are not entitled to recover. It is clear, from the record before us, that appellants' only grounds for the recovery in this case are the alleged lack of mental capacity and undue influence.

As hereinabove stated, in connection with the question of the change of venue, a careful perusal of all the evidence and testimony offered by appellants shows that there is in fact no competent evidence to support appellants' charges on the question of mental incapacity on the part of Silvestre Ramirez, or the exertion of undue influence over him by appellees. This conclusion calls for an analysis of the evidence in reference to both issues.

■ Naturally and logically, we first consider the evidence relating to the alleged mental incapacity of Silvestre Ramirez to execute a valid contract at the time the deeds in question were executed and delivered. In support of their contention to this effect, appellants offered the testimony of several persons who resided in Zapata county and who had occasion to see Silvestre from time to time, and they stated that he had become somewhat "childish"; that he was opposed at times to "dipping his cattle"; that he was headstrong in some respects; that he appeared to become forgetful in his later years; that he was a heavy eater, and very fond of "chicharones"—a form of pork—which he often ate. One witness testified that he was "not as good a trader" as in his younger days, and had made some bad loans; that he was uncertain as to the number of big steers he had on his ranch. It was shown that he was at times "nervous and worried" over his debts and the lawsuits filed against him. All of these witnesses, however, admitted on cross-examination that they had seen him only occasionally or that the incidents or obser-

vations they related took place at times when he was out on his ranch, at the bank, or otherwise attending to his business affairs at and around his ranch. No witness testified that he did not actively manage his cattle and ranching business until the time of his death. There is in the record no testimony of any witness to any definite fact or incident that reasonably indicates that Silvestre Ramirez was not possessed of his mental faculties at all times and up to the very time of his death, at the age of about eighty years.

On the other hand, the positive and affirmative testimony of numerous witnesses who knew him, observed him, were closely associated with him all their lives, is to the effect that he was at all times, and until his death, possessed of his mental faculties and constantly engaged in the active management and control of his cattle and ranching business. Furthermore, there is shown no fact or circumstance in connection with the deeding of the property to J. M. Sanchez, under the conditions existing, and the little farm tracts to his faithful old servants and employees, that indicates any lack of judgment, mental capacity, or business ability on his part. In the transaction in question, he required Sanchez to pay off and discharge his debts, liens, and the judgments against him in the total amount of approximately $4,000; he secured relief from his numerous troubles and lawsuits, and retained full possession and control of his land and ranching interests so long as he should live, with the exception that he did convey one-half interest in the mineral rights in his land immediately to Sanchez; he properly made provision for those old servants who had been faithful to him throughout the years, but reserved title and possession of the land deeded to them, so long as he should live. It is shown that he was careful in all ways in connection with the preparation, execution, and delivery of the deeds here in question. They were drawn by his attorney, signed and acknowledged by him in the presence of his friends and lifelong acquaintances, after a careful analysis as to the provisions therein contained, and then delivered for recording in the deed records of the county where he and the appellees have always lived. J. M. Sanchez then advised appellants of his obligations, under the deed, to pay off and discharge the debts and judgments which they held against their old grandfather. Appellants accepted Sanchez' money and each executed a release to him thereon, reciting the facts, and especially the execution of the deed here in question from their grandfather to Sanchez. It is shown, furthermore, that neither of appellants thereafter, and prior to the death of Silvestre Ramirez, made any contention that he was of unsound mind.

For the reasons and upon the testimony here recited and referred to, as well as much additional testimony not here mentioned, we hold that there is no evidence to support appellants' charge of mental incapacity on the part of Silvestre Ramirez, and, if the jury should have so found, it would have been the plain duty of the trial court to set aside their verdict.

There was no room for ordinary minds to differ on the matter testified about; the facts and circumstances are such that but one reasonable conclusion could be drawn therefrom, and the court would have been justified in instructing a verdict for appellees. Adams v. Houston National Bank (Tex.Com.App.) 1 S.W.(2d) 878, 879; Reed v. Hester (Tex.Com.App.) 44 S.W.(2d) 1107; Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Tex. 580, 72 S.W.(2d) 899; Erwin v. Tex. Employers' Ins. Ass'n (Tex.Civ.App.) 63 S.W.(2d) 1076; Tex.Jur. pp. 933, 943.

Passing, next, to a consideration of the evidence offered by appellants in support of their charge of undue influence by appellees upon the mind and action of their grandfather in connection with his execution and delivery of the deeds in question, we find the record without any evidence to sustain such allegation. The record in this respect is more conclusive, if possible, that there was no issue to go to the jury on this question than on the question of mental incapacity.

The deeds in question were prepared, executed, and delivered as above pointed out, and after much negotiation on the part of Silvestre Ramirez to get his debts paid and his troubles out of the way. The record shows that Silvestre approached Sanchez and made his own proposition; that he had made a similar proposition to another, without success; that neither Sanchez nor any of the other vendees in the deeds were present when the deeds were executed. We do not find any evidence, any act, or effort on the part of any one to secure the execution of the deeds except Silvestre Ramirez. There is no circumstance shown by the record which

indicates the use by anybody of undue influence in connection with the transaction.

On the contrary, it is affirmatively shown, by numerous witnesses and all the many circumstances, that Silvestre Ramirez sought out Sanchez in his troubles and induced him to aid him, and to accept the conveyance to him for the purposes and on the conditions therein stipulated. The other deeds to the old servants were at a later time, after care and consideration and a survey of the several little tracts, executed and delivered in the same open and uninfluenced manner. Under the evidence set forth in the record, no jury would or could find that appellees ever, at any time, exercised, or attempted to exercise, any influence, due or undue, on Silvestre Ramirez in respect to the execution or delivery of such deeds, and, if the jury should have returned a verdict finding the exercise of undue influence herein on the part of appellees, the court could not possibly have permitted it to stand.

■ There is no presumption or inference, from opportunity or interest, that undue influence has been exercised; it is a matter of proof, and its exercise must be shown to have existed at the very time and in respect to the exact matter charged. The rule is well settled by many cases, including Pierson v. Pierson (Tex.Civ.App.) 57 S.W.(2d) 633; Brodt v. Brodt (Tex.Civ.App.) 91 S.W.(2d) 837; McKenzie v. Grant (Tex.Civ.App.) 93 S.W. (2d) 1160, and authorities in each discussed.

■ The fact that the court permitted the issues to go to the jury, and that the jury found the facts as the court could and should have found them, independent of the jury, is a matter of no importance to appellants. There were no jury issues in the case, at the close of all the evidence, and the court would have been fully justified in instructing the jury in favor of appellees. All questions and complaints of appellants in respect to the charge of the court to the jury, or any other matter or complaint concerning the jury in this case, therefore, passes out of the picture.

This record shows a course of conduct on the part of a man eighty years of age, acting, under the facts and all the circumstances as developed on the trial, as any sane and normal individual would conduct himself. His wife and only child had passed away. His only two grandchildren held judgments against him as the result of legal proceedings they had taken against him in his old age. Under a cloud of debts and troubles he approached his friend, and was given aid and assistance. He made a definite and sensible arrangement respecting his own property that was beneficial to himself, and which enabled him to fully enjoy the fruits thereof as long as he remained on this earth. He did not forget or overlook those who had been his faithful servants and friends in his old home throughout the years.

In view of the action of his grandchildren toward him, in his declining years, it is not unreasonable, and certainly no evidence of mental weakness, that he disposed of his own property in accordance with his own wishes, and as shown by the record. He possessed all the mental, physical, and moral strength necessary and requisite to fully recognize his obligations, and to fairly arrange to have his honest debts fully paid, and to leave this "vale of tears" with a clean slate—in so far as his legal obligations to his fellowmen are concerned. Such conduct, clearly, is not that of a man lacking mental capacity, nor is it the result of the exercise over him, by any other person or persons, of undue influence.

Finding no error in the record of the trial of this case in the court below, its judgment should be in all things affirmed, and it is so ordered.