## BARLOW v. BARLOW.

### No. 2203.

Court of Civil Appeals of Texas. Waco.

April 4, 1940.

Lovett, Lovett & Ralston and J. S. Simkins, all of Corsicana, for appellant.

Richard & A. P. Mays, of Corsicana, for appellee.

TIREY, Justice.

Plaintiff, Mrs. Freda Barlow, administratrix of the estate of Thomas M. Barlow, deceased, her husband, brought this suit against Mrs. C. P. Barlow, a feme sole, mother of the deceased, for the possession of three and three-fourths shares of the capital stock of The First National Bank of Kerens, Texas. The parties will be here designated as in the trial court. Plaintiff alleged that her husband was the legal owner of the shares of stock at the time of his death. The defendant defended on the ground that she was in truth and in fact the owner of the stock, and, in the

alternative, that she held it as collateral security for the payment of a debt due her by the deceased. The case was tried to a jury, and, at the conclusion of the evidence, the court peremptorily instructed the jury to return a verdict for the defendant. Said instruction has been assigned as error.

Plaintiff called the defendant as her first witness and developed from her on direct examination the following facts: (a) that the stock in question at the time of the death of deceased was on the books of the bank in question in the name of the deceased; (b) that at the time of his death the stock certificates were in the writing desk of the defendant; (c) that deceased kept no papers in defendant's writing desk; (d) that the three and three-fourths shares of stock had been in the defendant's writing desk since the bank merger; (e) that the certificate of the three and three-fourths shares of stock in question left the defendant's possession one time after the bank merger. The defendant, on cross-examination by her counsel, testified that the certificate of the three and three-fourths shares of stock was returned to her "by the same hands to whom it was at first delivered." The defendant further testified on cross-examination, over objection of plaintiff, that her deceased son, in January, 1929, became indebted to The First National Bank of Corsicana in the amount of $1,500; that this indebtedness was evidenced by a note that became due November 1, 1929; that attached to her son's note was the pledge agreement reciting that certificate No. 194 for 17 shares of stock in The Kerens National Bank, of Kerens, Texas, issued to Tom M. Barlow, had been pledged to secure the payment of said note. Certificate No. 194 for 17 shares aforesaid was attached to said note. Said stock certificate was endorsed in blank on the back thereof by Tom M. Barlow. On November 4, 1929, Tom M. Barlow drew a voucher in favor of The First National Bank of Corsicana for $1,600.67 on The Kerens National Bank of Kerens, Texas, and signed Mrs. F. E. Barlow by T. M. B. Mrs. F. F. Barlow was the same person as the defendant. The defendant testified that her son arranged with her to pay the note in question and that the note and the pledge agreement and the stock certificate for the 17 shares pledged to secure the payment of the note had been delivered to her by her son and that he had never repaid said indebtedness to her. The three and three-

fourths shares of stock in The First National Bank of Kerens, Texas, were issued on the 31st day of July, 1935. The evidence further discloses that "The Kerens National Bank," of Kerens, Texas (this being the bank in which Tom M. Barlow held the 17 shares of stock) merged with The First National Bank of Kerens in January, 1933. After the merger, the new bank was known as "The First National Bank of Kerens, Texas." In March of 1933, five and three-fourths shares of stock in "The First National Bank of Kerens, Texas," were issued and delivered to T. M. Barlow in one certificate. In July of 1935, the bank issued one certificate for three and three-fourths shares and another certificate for two shares in the name of T. M. Barlow. The plaintiff's testimony disclosed that the certificate for the two shares of stock was later pledged by the said T. M. Barlow to the Presbyterian Missionary Society to secure a loan for approximately $200, and that after the death of T. M. Barlow, said two shares so pledged were sold and the proceeds of the same applied to the payment of the debt to said Society; that defendant made no objection to the sale of the two shares of bank stock, and that the sale was made by the plaintiff. The evidence further showed that the dividends on the stock after the bank merger were paid direct to the said T. M. Barlow as long as he lived. In July of 1935, T. M. Barlow obtained a loan from the State National Bank of Corsicana for the sum of $125. This debt was due September 15, 1935; the note was signed by T. M. Barlow and his brother, H. C. Barlow, and attached to the note was the stock certificate for the three and three-fourths shares of stock in question as collateral security. That debt was paid September 21, 1935. Mrs. Freda Barlow, the plaintiff, testified on direct examination that she saw the certificate of the three and three-fourths shares of stock in the family box in Joe Sheppard's office twice before T. M. Barlow's death; that the stock certificate was not in the box after his death, and that she next saw the stock certificate in the home of the defendant; that she did not know who took the stock certificate out of the family box in Joe Sheppard's office and carried it to the home of the defendant. She further testified that when the dividends were paid on the stock to her husband, that she and her husband went to the bank and that her husband gave her one-half of the dividends. The de-

fendant's son, H. C. Barlow, testified that his brother gave the stock in question to his mother in order to get her to pay his original indebtedness of $1,500 and interest to The First National Bank of Corsicana back in 1929.

In determining the propriety of the court's action in giving the peremptory instruction in favor of the defendant, we can only consider the evidence tending to support the material allegations of the appellant's petition, wholly disregarding that which is opposed to it or contradictory in its nature. Anchor v. Gose, Tex.Civ.App., 8 S.W.2d 690; Wininger v. Ft. Worth & D. C. Ry. Co., 105 Tex. 56, 143 S.W. 1150. The question therefore arises, first, does the evidence raise a fact issue of ownership of the three and three-fourths shares of stock in the estate of deceased, and second, if the stock in question belonged to the estate of deceased, whether or not the defendant was holding it as collateral security for the $1,500 note which she paid for T. M. Barlow in 1929? The foregoing questions have given us some concern and we have studied the testimony introduced very carefully. This record is uncontradicted that Tom Barlow acquired the 17 shares of bank stock in June, 1924. He pledged it as collateral security for a debt in January, 1929, and the defendant paid this debt for her son in November, 1929. It appears that when the banks merged in January, 1933, that the consolidated bank issued and delivered to T. M. Barlow five and three-fourths shares of stock. Thereafter, in July, 1935, the consolidated bank apparently took up the old stock certificate for five and three-fourths shares and issued two new certificates, one for two shares and the other for three and three-fourths shares. T. M. Barlow pledged the certificate for two shares of stock to a church society to secure his debt to it and after his death, this certificate was sold by the plaintiff and the proceeds applied to the payment of the debt. There is no evidence that the defendant made any objection to the sale of same nor the application of the proceeds thereof to the payment of the debt for which it was pledged. Moreover, Tom Barlow, in July, 1935, pledged the certificate to the three and three-fourths shares of stock in question to the State National Bank of Corsicana to secure a loan of $125. In addition thereto, the plaintiff testified that she saw the certificate to the three and three-fourths shares in a family box at Joe Sheppard's store twice before her husband's death and did not see the stock certificate in the family box after his death, but did see the stock certificate in the home of the defendant after her husband's death. Surely, the above testimony was sufficient to raise a fact question of ownership of the stock in question. We think that this evidence raises the fact issue that T. M. Barlow was exercising dominion and control over the certificate of stock in question up until the time of his death, because the evidence is uncontroverted that the stock was on the books of the bank in his name and that he had been receiving and using the dividends paid thereon. In the case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, point page 1063, the Supreme Court said: "To authorize the court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

Under the above rule, the plaintiff was entitled to go to the jury on the question of whether or not the stock in truth and in fact belonged to T. M. Barlow at the date of his death. Of course, it is true that if the defendant was holding the stock as collateral security for the debt that she paid for her son in 1929, such fact, if true, would give her the right to retain possession of the stock until her debt was paid, even though her debt was barred by limitation. See Central National Bank v. Latham & Co., Tex.Civ.App., 22 S.W.2d 765, point page 768, writ dismissed; Harde v. Germania Life Ins. Co., Tex.Civ.App., 153 S.W. 666, point page 670; Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, point page 1081, 115 A.L.R. 329. However, we think that the question of whether or not the defendant held the stock in question as collateral security under the evidence was a question of fact to be submitted to the jury. For these reasons, we think the court erred in giving the peremptory instruction and that this cause will have to be reversed.

Appellant has assigned as error the cross-examination of the defendant by her attorney as to her transactions with her son because same are in violation of the provisions of Article 3716 of our Revised Statutes. The plaintiff called the defendant to the witness stand, which she had a right to do, and interrogated the defendant on direct examination about possession of the bank stock in question (1) as to

where she kept it; (2) as to the length of time she had it; (3) as to the date of the merger of the banks; and (4) after the shares of stock came into her possession, after the merger, as to whether or not they ever left her possession. It would serve no useful purpose to discuss this matter at length, but we have considered it very carefully and have concluded that the testimony adduced on cross-examination of the defendant was so related to the facts elicited by plaintiff on direct examination as to bring it within the exception of Article 3716, supra. See Ramirez v. Sanchez, Tex.Civ.App., 97 S.W.2d 1034, point page 1038; Ramirez v. Vela, Tex.Cix.App., 102 S.W.2d 447, point page 449, writ dismissed.

It is true that plaintiff made the defendant her witness, but under Article 3769c of Vernon's Ann.Civ.St., the jury had the right to disregard the testimony of the defendant in toto. See Schumacher v. Missouri Pacific Transportation Co., Tex.Civ. App., 116 S.W.2d 1136. The court erred in giving the directed verdict, and, for that reason, the judgment of the trial court is reversed and the cause is remanded.